**Troy FORD, Petitioner, Pro Se,**

v.

**Andrea QUARANTILLO, District Director, INS.**

No. C.A. 00–2704.

United States District Court, D. New Jersey.

April 27, 2001.

Troy Ford, Paterson, NJ, pro se.

Neil Rodgers Gallagher, AUSA, U.S. Attorney's Office, Newark, NJ, for defendant.

## MEMORANDUM AND ORDER

LIFLAND, District Judge.

Petitioner, Troy Ford (Ford)[1] filed this pro se petition for relief pursuant to 28 U.S.C. § 2241.

### BACKGROUND

Ford, who is a native citizen of Guyana, entered the United States on a non-immigrant visa in 1992 and stayed beyond the six month period allowed under the visa. On December 16, 1997, Ford pled guilty to a violation of *N.J.S.A.* 2C:20-2(D) (theft from spouse). On April 17, 1998, he was sentenced to a four year term of imprisonment. On April 16, 1998 Ford pled guilty to a violation of *N.J.S.A.* 2C-35-7, possession of cocaine with intent to distribute,

---

1. The INS' brief indicates that petitioner's real name is Colin Anthony Brown. Because "Troy Ford" is the name that appears on the docket and consistently on other documents in the record, (including documents from and about the petitioner), this Court will use the name Troy Ford.

within 1000 feet of a school. He was sentenced on April 17, 1998 to a four year term of imprisonment.

A Notice to Appear ("NTA") in Removal Proceedings was issued by the INS on May 14, 1999.[2] On August 13, 1999 Immigration Judge Daniel A. Meisner ordered that Ford be removed to Guyana. Ford never appealed that decision.

Ford came into INS custody from the New Jersey Department of Corrections on January 26, 2000. On April 5, 2000, the INS sent a presentation for a travel document to the Guyana Consulate in Washington D.C. Guyana has not yet issued the travel documents.

### DISCUSSION

Ford claims that the INS is violating his due process rights by continuing to detain him. He does not claim that he has the right to remain in the United States, but requests relief from the extended detention.

The law dealing with the detention of deportable aliens is found in 8 U.S.C. § 1231 which is supplemented by various subsections of 8 C.F.R. § 241. Under § 1231 when deportation of an alien is ordered and that alien has been convicted of aggravated felonies, controlled substance offenses, firearms offenses or other serious crimes, the Attorney General is to keep the alien in custody if the incarceration for the crime has ended and the alien cannot be immediately removed.[3] *See* § 1231. However, the Attorney General cannot hold the alien for more than ninety days. § 1231(a). There are supervised release procedures so an alien can be released and monitored. *See* §§ 1231(a)(3).

■ Under certain circumstances, aliens may be detained beyond the ninety day period. § 1231(a)(6). Extended detention is permissible only when it is likely that an alien will avoid removal by fleeing if released, and/or the alien's release poses a serious threat to the community's safety. *See* § 1231(a); *see also* 8 C.F.R. § 241.4. Aliens are persons for purposes of the Fifth Amendment and extended detentions violate the Constitution unless (1) the INS conducts a review to determine that detention is necessary to prevent a risk of flight or threat to the community, (2) there are adequate and reasonable provisions for a grant of parole, and (3) there is a possibility of eventual departure. *Chi Thon Ngo v. INS*, 192 F.3d 390, 391 (3d Cir.1999) (holding that continued detention of alien whose country of origin had refused to allow his return violated alien's due process rights where the INS' basis for the extended detention was the criminal convictions and no actual inquiry was made whether his threat to community and risk of flight warranted continuation of custody). Due process cannot be satisfied by "rubber stamp" denials of release. Due process requires an evaluation of the individual's current threat to the community and risk of flight. *Id.* at 398.

■ The Interim Procedures promulgated by the INS require individualized analysis of the alien's eligibility for parole, present danger to society and willingness to comply with the removal order. Under the Interim Procedures, reviews must be conducted periodically and detainees must be adequately informed about their right to appear, present information and have representation at these review proce-

---

2. The Notice to Appear stated that Ford was a native of Jamaïca because Ford had initially told the INS that he was a citizen of that country.

3. The Act references the authority of the Attorney General. This authority has been duly delegated to the INS. *See* 8 C.F.R. §§ 2.1, 100.2(a).

dures.[4] When the INS abides by these Interim Procedures due process is satisfied. *Id.* at 399. When an alien's country of origin has refused to allow his return, the INS must employ the Interim Procedures (or regulations that are at least as favorable to the alien) in evaluating whether continued detention is justified. *Id.* at 398, 399.

An alien may also be detained beyond the ninety day time period if the alien conspired or acted to prevent his/her removal, thereby increasing the amount of time it takes to remove the alien. § 1231(a)(1)(C).

In this case, the INS argues that: 1) Ford's continued detention is lawful, and 2) Ford caused the continued detention because prior to telling the INS that he is from Guyana, Ford stated that Jamaica was his native country. (*See* Respondent's Answer pp. 4–7).

■ The INS has not presented this Court with any evidence showing that it abided by the Interim Procedures. The record does not contain any documentation which demonstrates that the INS conducted review procedures before determining that Ford should remain detained. As far as the record indicates these procedures have been ignored and Ford is being detained in violation of the Constitution.

■ Furthermore, this Court does not find that Ford's continued detainment is the result of his conspiring or acting to prevent his removal. Ford misinformed the INS about his country of origin in a letter dated July 6, 1998. (*See* Exhibit 5). Subsequently, Ford wrote another letter to the INS correctly stating that he is from Guyana. This letter also stated that while he goes by the name Troy Ford, his real name is Colin Anthony Brown. (*See* Exhibit 6). The INS stated that it received this letter in March 2000. After Ford correctly informed the INS that he is a citizen of Guyana, the INS proceeded to hold him for well over ninety days and he is still detained; one year and two months have elapsed since Ford accurately informed the INS about his country of origin. Accordingly this Court does not find that Ford's original misrepresentation is sufficient justification for continuing to hold Ford for over ninety days.

On January 3, 2001, the INS wrote to this Court to explain why it is detaining Ford for an extended period of time. The letter stated "[Guyana] appears to be taking an inordinate amount of time to approve travel documents for a number of their citizens who are in INS custody pending removal from the United States." The letter also stated "Ms. Otis ( the desk officer at the State Department for Guyana ) is also inquiring about the possibility of legislation being proposed in Guyana concerning the repatriation of their nationals." (Letter from Neil R. Gallagher, Esq., Assistant U.S. Attorney, January 3, 2001). This letter further supports the Court's view that Ford's early misrepresentation is not the real reason for the delay in his removal.

Accordingly it is on this ——— day of April, 2001 **ORDERED** that petitioner be released within 60 days unless the INS begins the appropriate review process for petitioner under the Interim Rules (or under regulations that are at least as favorable to him). This Court does not express a view as to whether or not petitioner should be released as a result of review under the Interim Rules. Counsel for the

---

4. The Interim procedures are set forth in their entirety in the Appendix to *Ngo*, 192 F.3d at 400; *See also* 8 C.F.R. § 241.

INS shall file a status report with the Court on June 25, 2001.