Ali Toem MASHAI, A78–520–634, Petitioner,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Respondent.

Civil Action No. 02–9533.

United States District Court, E.D. Pennsylvania.

April 16, 2003.

Richard M. Bernstein, U.S. Attorney's Office, Philadelphia, PA, for Respondent.

## MEMORANDUM

DuBOIS, District Judge.

Presently before the Court is petitioner Ali Toem Mashai's Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241, challenging his continued deten-

tion by the Immigration and Naturalization Service ("INS") pending his removal to Iraq. For the reasons set forth in this Memorandum, the Court denies the Petition without prejudice to petitioner's right to proceed under the custody review procedures of 8 C.F.R. § 241.4 if warranted by future circumstances.

## I. BACKGROUND

Petitioner, Ali Toem Mashai ("Mashai"), is a native and citizen of Iraq. On June 7, 2001, Mashai arrived in the United States at John F. Kennedy International Airport in New York from Switzerland. Pursuant to § 235(a)(1) of the Immigration and Nationality Act ("INA"), Mashai, as an alien "who arrive[d] in the United States" was deemed "an applicant for admission." 8 U.S.C. § 1225(a)(1). As an "applicant for admission," he was required to be inspected by immigration officers. See 8 U.S.C. § 1225(a)(3). During that inspection, immigration officers determined that Mashai was inadmissible because he presented a fraudulent passport from Denmark. See 8 U.S.C. § 1182(a)(6)(C)(i) (providing that an alien who seeks admission through misrepresentation or fraud is inadmissible); 8 U.S.C. § 1182(a)(7)(A)(i)(I) (stating that an immigrant applying for admission who is not in possession of a valid, unexpired passport is inadmissible).

If an immigration officer determines that an alien "who is arriving in the United States" is inadmissible because of a fraudulent passport, that officer "shall order the alien removed from the United States without further hearing or review." 8 U.S.C. § 1225(b)(1)(A)(i). If, however, the alien "indicates ... an intention to apply for asylum" during the inspection, the alien's immediate removal is stayed and he is detained by the INS for consideration of his application for asylum. See 8 U.S.C. §§ 1225(b)(1)(A)(ii) and 1225(b)(1)(B)(ii).

Mashai subsequently applied for asylum, staying his immediate removal from the United States. His application was referred to an Immigration Judge ("IJ") who denied the application on October 18, 2001 and ordered Mashai removed. *See* 8 C.F.R. § 235.6(a)(ii); 8 C.F.R. § 208.30(f). The IJ's decision was affirmed by the Board of Immigration Appeals ("BIA") on March 13, 2002. Mashai did not appeal that ruling ordering him removed from the United States.

Because Mashai attempted to use a false passport upon his arrival in the United States, in November 2001 he was charged with committing passport fraud in violation of 18 U.S.C. § 1546. Mashai was convicted of that offense on May 8, 2002, and sentenced to time served—six months—in prison.

Mashai filed the instant Petition on December 31, 2002. Currently, he is being detained by the INS at Berks County Prison in Leesport, Pennsylvania pending his removal to Iraq.

## II. DISCUSSION

Mashai does not challenge the BIA's decision of March 13, 2002 removing him from the United States. Rather, Mashai argues that the INS's failure to promptly remove him, resulting in his continued detention in INS custody, is violative of due process. Mashai asserted in the Petition that because it is "impossible" to obtain the travel documents necessary for his removal to Iraq, his removal is "unlikely to occur in the reasonably foreseeable future or indeed at any time." Pet. at 2. That assertion was based on the fact that the United States did not have any diplomatic relations with Iraq at that time.[1] Gov't Resp. at Ex. 2. Mashai contends that his

indefinite detention is constitutionally impermissible under the United States Supreme Court's decision in *Zadvydas v. Davis,* 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001).

### A. The Immigration Scheme Under the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 and the *Zadvydas* Decision

#### 1. *Removal Proceedings*

This case is governed by the Illegal Immigrant Reform and Immigrant Responsibility Act ("IIRIRA") of 1996. Under the IIRIRA, aliens who "arrive" at the border seeking entry into the country are deemed to be "applicants for admission" to the country. 8 U.S.C. § 1225(a)(1); *see also* 8 C.F.R. § 1.1(q) (defining an arriving alien as an "applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry"). Such "arriving" aliens who are inspected at the border but are denied admission are classified as "inadmissible" aliens because they are not officially admitted into the United States. *See* 8 U.S.C. §§ 1101(a)(13)(A) and 1182(6)(A)(i).

If an alien is ordered removed from the United States, his detention, release and removal is governed by the provisions of 8 U.S.C. § 1231. Pursuant to 8 U.S.C. § 1231(a), the Attorney General shall remove an alien from the United States within ninety days after the date that the removal becomes "administratively final." During that ninety-day "removal period," detention of the alien is mandatory. 8 U.S.C. § 1231(a)(2). At the conclusion of

---

1. The Court notes that there has been a change in the government of Iraq since the Petition was filed and that conditions in Iraq at this time can best be described as unsettled.

the ninety-day period, the alien may be released under the Attorney General's supervision, 8 U.S.C. § 1231(a)(3), or detained beyond the ninety-day removal period if he is "inadmissible under section 1182 of this title." 8 U.S.C. § 1231(a)(6).[2]

### 2. The Zadvydas Decision

In *Zadvydas*, the Supreme Court addressed the issue of whether 8 U.S.C. § 1231(a)(6) authorizes the Attorney General to detain a removable alien indefinitely beyond the ninety-day period. Reasoning that an alien's indefinite detention "would raise serious constitutional concerns," 533 U.S. at 682, 121 S.Ct. 2491, the Court concluded that the statute "limits an alien's post-removal-period detention to a period reasonably necessary to bring about the alien's removal from the United States. It does not permit indefinite detention." *Id.* at 689, 121 S.Ct. 2491. The Court stated that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699, 121 S.Ct. 2491.

The Supreme Court held in *Zadvydas* that a period of six (6) months is a presumptively reasonable period of detention. *Id.* at 701, 121 S.Ct. 2491. The Court further ruled that "[a]fter this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.* The Court made clear, however, that this "does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

### 3. The Zadvydas Decision Does Not Apply to Mashai

■ The Government argues that because *Zadvydas* limited its holding to those aliens who had been "admitted" or gained "entry" into the United States, that decision is inapplicable to Mashai because he had not gained admission nor effected an entry into the country. According to the Government, because Mashai was detained at the airport and denied admission into the United States because he presented a fraudulent passport, he is an inadmissible alien and thus not covered by the holding of *Zadvydas*. The Court agrees.

The Supreme Court in *Zadvydas* emphasized that its due process analysis of the post-removal-period detention statute was confined to those aliens who had been "admitted" to the United States or had "effected an entry" into the United States:

> We deal here with aliens who were admitted to the United States but subsequently ordered removed. Aliens who have not yet gained initial admission to this country would present a very different question.
>
> * * *
>
> The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law. It is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic bor-

---

**2.** The Attorney General is also permitted to detain aliens beyond the ninety-day removal period who violate criminal laws, threaten national security, or are deemed to be a risk to the community or unlikely to comply with the removal order. 8 U.S.C. § 1231(a)(6).

ders. But once an alien enters the country, the legal circumstances changes, for the Due Process Clause applies to all "persons" within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.

533 U.S. at 682, 694, 121 S.Ct. 2491 (citations omitted).

The *Zadvydas* Court did not interpret the post-removal-period detention statute as applying equally to those inadmissible aliens, like Mashai, who had been stopped at the border and denied admission and those inadmissible aliens who gained entry into the United States, whether lawfully or unlawfully. Had Mashai passed through customs without being detained, *Zadvydas* would be applicable because, in that scenario, he would have effected a successful entry into the country, albeit illegally. *See Lin v. Ashcroft,* 247 F.Supp.2d 679, 684–85 (E.D.Pa.2003) (holding that *Zadvydas* applies to inadmissible aliens who have illegally entered the United States); *Jiang v. Ashcroft,* Civil No. 3:CV–01–1621, slip op. at 6 (M.D.Pa. May 28, 2002); *Zhang v. INS,* Civil No. 3:CV–00–1950, slip op. at 5 (M.D.Pa. May 23, 2002); *Zheng v. INS,* Civil No. 1:CV–01–2166, slip op. at 6 (M.D.Pa. March 12, 2002). The fact that Mashai was apprehended at a port-of-entry, however, is fatal to his claim that he is

entitled to the due process protections set forth in *Zadvydas.*

On November 14, 2001, in response to the *Zadvydas* decision, 8 C.F.R. § 241.13 was adopted by the INS. Section 241.13 "establishes special review procedures for those aliens who are subject to a final order of removal and are detained under the custody review procedures provided at § 241.4 [3] after the expiration of the removal period, where the alien has provided good reason to believe there is no significant likelihood of removal to the country to which he or she was ordered removed ... in the reasonably foreseeable future." 8 C.F.R. § 241.13(a). However, § 241.13 is inapplicable to "*arriving aliens, including those who have not entered the United States.*" 8 C.F.R. § 241.13(b)(3) (emphasis added).[4] That is Mashai's immigration status—he is an inadmissible alien who has never entered the United States, formally or otherwise, and he is not covered by the review procedures set forth in 8 C.F.R. § 241.13.

The Court concludes that *Zadvydas* is inapplicable to Mashai and that he is not entitled to the due process protections set forth in that case. Accordingly, his Petition, which seeks an immediate release from the custody of the INS, is denied. That denial, however, is without prejudice to Mashai's right to proceed under the custody review procedures set forth in 8

---

**3.** This section governs the continued detention or release of aliens subject to a final order of removal, after the ninety-day removal period has expired, and provides instructions to the INS as to the procedures for reviewing an alien's continued custody. *See infra* II.A.4. The custody review procedures of § 241.4 "do not apply after the Service has made a determination, pursuant to the procedures provided in 8 C.F.R. § 241.13, that there is no significant likelihood that an alien under a final order of removal can be removed in the reasonably foreseeable future." 8 C.F.R. § 241.4(b)(4).

**4.** Section 241.13 also does not apply to those aliens who have been granted immigration parole into the United States, Mariel Cubans, aliens who are still within the statutory ninety-day removal period, and aliens ordered removed by the Terrorist Removal Court. *See* 8 C.F.R. § 241.13(b)(3). Mariel Cubans are Cuban nationals who came to the United States via the Mariel Boatlift of 1980 and were released into the country on immigration parole because Cuba refused to accept their return.

C.F.R. § 241.4 if warranted by future circumstances.

#### 4. *Mashai's Rights Under 8 C.F.R. § 241.4*

██ The "lengthy" detention of inadmissible aliens like Mashai, whose "removal is beyond the control of the INS,"[5] does not violate due process where "appropriate provisions for parole are available." *Chi Thon Ngo v. INS*, 192 F.3d 390, 398 (3d Cir.1999); *see also Caballero v. United States*, 145 F.Supp.2d 550, 557 (D.N.J. 2001). Such "appropriate provisions" are set forth in 8 C.F.R. § 241.4, which requires an "individualized analysis of an alien's eligibility for parole" and an evaluation of his "present danger to society and willingness to comply with the removal order." *Ford v. Quarantillo*, 142 F.Supp.2d 585, 587 (D.N.J.2001); *see also* 8 C.F.R. §§ 241.4(d)(1) and 241.4(e). Under 8 C.F.R. § 241.4, custody reviews must be conducted periodically and alien detainees must be adequately notified about their right to appear, present information, and have representation at their reviews. Moreover, custody determinations must be provided to alien detainees and decisions to retain custody "shall briefly set forth the reasons for the continued detention." 8 C.F.R. § 241.4(d). The procedures promulgated by 8 C.F.R. § 241.4 prevent "rubber stamp denials" of release, and if "conscientiously applied," they provide "reasonable assurance of fair consideration of [an alien's] application for parole pending removal." *Ngo*, 192 F.3d at 398, 399. Therefore, "[w]hen the INS abides by these ... [p]rocedures due process is satisfied." *Ford*, 142 F.Supp.2d at 588 (citing *Ngo*, 192 F.3d at 399).

The INS District Office in Philadelphia, Pennsylvania conducted a review of Mashai's case on January 7, 2003 pursuant to 8 C.F.R. § 241.4 and determined that he remain in custody. The basis of that decision was Mashai's failure to make "any attempts to obtain a travel document" for his return to Iraq, and the determination that he posed a significant risk of absconding pending his removal. Gov't. Resp. at Ex. 2; 8 C.F.R. §§ 241.4(d)(1), (e)(6), and (f)(7). Mashai's case was transferred to the INS's Headquarters Post–Detention Union ("HQPDU") for further custody reviews pursuant to 8 C.F.R § 241.4(c)(2).

The HQPDU is required to make its own custody determination at the end of the three-month period following the District Office's decision of January 2003 to transfer Mashai's case "or as soon thereafter as practicable." 8 C.F.R. § 241.4(k)(2)(ii). On the present state of the record, the HQPDU has not yet made that custody determination. Should the HQPDU determine that Mashai remain in INS custody, a subsequent review of his detention "shall ... be commenced ... within approximately one year of" that determination which declined his release, with annual reviews thereafter. 8 C.F.R. § 241.4(k)(2)(iii). Mashai has the opportunity "between annual reviews," to request an interim review of his custody once every three months "based on a proper showing of a material change in circumstances since the last annual review." *Id.* The HQPDU must respond to that request within ninety days and may conduct more frequent reviews if prompt removal is "practicable and proper, or for other good cause." 8 C.F.R. § 241.4(v)(3).

The Court's decision to deny Mashai's Petition seeking immediate release does not prevent him from invoking the custody review procedures of 8 C.F.R. § 241.4 and

---

**5.** In this case, the INS cannot "control" Mashai's removal at this time because the United States does not yet have diplomatic relations with Iraq.

receiving periodic evaluations if warranted by future circumstances. "So long as petitioner will receive searching periodic reviews [under 8 C.F.R. § 241.4], the prospect of indefinite detention without hope for parole will be eliminated. In these circumstances, due process will be satisfied." *Ngo*, 192 F.3d at 399; *see also Xi v. INS*, 298 F.3d 832, 843 n. 2 (9th Cir.2002) (Rymer, J., dissenting) ("Inadmissible aliens are not detained without any process at all. An administrative review procedure [—8 C.F.R. § 241.4—] is in place.").

## III. CONCLUSION

For the foregoing reasons, the Court denies Mashai's Petition without prejudice to his right to proceed under the custody review procedures set forth in 8 C.F.R. § 241.4 if warranted by future circumstances.

An appropriate Order follows:

### *ORDER*

**AND NOW,** this 16th day of April, 2003, upon consideration of petitioner's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (Document No. 1, filed December 31, 2002), and the related submissions of the parties, **IT IS ORDERED** that, for the reasons set forth in the attached Memorandum, the Petition for Writ of Habeas Corpus is **DENIED WITHOUT PREJUDICE** to petitioner's right to proceed under the custody review procedures set forth in 8 C.F.R. § 241.4 if warranted by future circumstances