**G & M, INC., a corporation, Plaintiff-Appellee,**

v.

**R. B. NEWBERN, Defendant-Appellant (two cases).**

**Nos. 71–2561, 72–1287.**

United States Court of Appeals, Ninth Circuit.

Oct. 9, 1973.

Jack H. Cairns (argued), Portland, Ore., Nels Peterson, of Peterson, Chaivoe & Peterson, Portland, Ore., for defendant-appellant in No. 71–2561.

Bruce M. Hall (argued), Kenneth M. Novack, Gerard K. Drummond, of Rives, Bonyhadi & Hall, Portland, Ore., Robert E. Heaton, of Short, Cressman, & Cable, Seattle, Wash., for plaintiff-appellee in No. 71–2561.

David M. Brown (argued), Robert Sarno, of Fleishman, McDaniel, Brown & Weston, Hollywood, Cal., for defendant-appellant in No. 72–1287.

Robert C. Bonner, Asst. U. S. Atty. (argued), William D. Keller, U. S. Atty., Eric A. Nobles, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff-appellee in No. 72–1287.

Before DUNIWAY, ELY, and WRIGHT, Circuit Judges.

## OPINION

DUNIWAY, Circuit Judge:

These appeals arise from the same case, and were heard together, although they were separately briefed.

1. *The Appeal in No. 71–2561.*

This is an appeal from a final judgment. We affirm.

In March of 1968, plaintiff-appellee G & M, Inc. purchased about 104,000 shares of the stock of Gas-Ice Corp. from defendant-appellant R. B. Newbern (about 21,000 shares), his wife (about 49,000 shares), his son (about 12,000 shares) and an associate (about 21,000 shares). Gas-Ice was in the business of producing liquid carbon dioxide and dry ice. The purchase price of the stock was $2.87 a share. G & M paid $.47 a share as a down payment and was to pay the remaining $2.40 over a ten-year period.

In addition to these shares, there were about 46,000 publicly owned shares outstanding. G & M also purchased most of these, paying $2.87 per share, and eventually owned more than 98% of the stock of Gas-Ice. The total purchase price was $423,870.30. In addition, G & M agreed that Gas-Ice would lease from Mr. and Mrs. Newbern a storage facility, which they owned, known as the "tank farm," at a rental of $1,200 a month for ten years, with an option to purchase at the end of five years for $90,000, or at the end of ten years for $60,000.

G & M made the purchase in reliance on Newbern's representations as to the general physical and financial condition of Gas-Ice and the tank farm. Most of these representations proved false. G & M then brought this action against Newbern for damages, alleging violations of the securities laws, 15 U.S.C. § 78j and Rule 10b–5, and breach of contractual warranties. A jury returned a general verdict of $160,000 in favor of G & M.

Newbern makes a number of arguments. We consider them *seriatim.*

1. Newbern had told G & M that the tank farm was under no prior lease. In fact Gas-Ice had in 1965 leased the tank farm from the Newberns for ten years at $600 per month. This is one of the misrepresentations alleged by G & M.

Newbern argues that the district court was precluded by collateral estoppel from considering the fraud as to the lease because of a decision of the Oregon Circuit Court (since affirmed by the Oregon Supreme Court). In that case Gas-Ice was plaintiff and Newbern was defendant. Gas-Ice claimed that Newbern had breached his fiduciary duty to Gas-Ice when he was an officer of that corporation by having Gas-Ice enter into the 1965 and 1968 leases of the tank farm. The basis of the complaint was that Newbern was aware that a permit for the facility had never been issued by the state Chief Boiler Inspector because of structural defects, and that the facility was liable to being shut down at any time, as it was in fact in June of

1970. Gas-Ice sought, inter-alia, cancellation of the 1968 lease. The state court, while finding that plaintiff had been constructively evicted from the facility when it was shut down, declined to treat the lease as void *ab initio*.

■ Newbern argues that G & M is estopped by that judgment from relying upon his fraudulent representations about the two leases in this case. The issue in this case is the misrepresentations about the lease, as part of the larger picture of misrepresentations involved in the contract. While G & M is in such a relationship with Gas-Ice that collateral might apply in an otherwise proper case, the issues involved in the two cases are not sufficiently similar to bring that doctrine into play. *See* Bahler v. Fletcher, 1970, 257 Or. 1, 474 P.2d 329; Schwartz v. Pub. Admin., 1969, 24 N.Y. 2d 65, 298 N.Y.S.2d 955, 246 N.E.2d 725.

2. Newbern argues that the district court erred in its instruction about the proper measure of damages for violations of the securities laws. The jury found that plaintiff's damages were $160,000, or $1.08 per share for the approximately 148,000 shares that plaintiff purchased. Newbern's claim is that if he is liable, it is only for the $1.08 per share for the 21,000 shares that he himself sold to G & M.

■ We disagree. A plaintiff who is induced to buy or sell stock as a result of misrepresentations made by someone not a party to the sale may sue that person for damages incurred as a result of the sale. *See, e. g.*, Brennan v. Midwestern United Life Ins. Co., N.D.Ind., 1966, 259 F.Supp. 673, 682; New Park Mining Co. v. Cranmer, S.D.N.Y., 1963, 225 F.Supp. 261, 266; Freed v. Szabo Food Service, Inc., CCH Sec. L. Rptr., ¶ 91,317 (1961–64 Transfer Binder, N.D.Ill., Jan. 14, 1964). *See generally* 2 Bromberg, Securities Laws Fraud-Sec. Rule 10b–5, § 8.5 at 208.10 (1971), and cases cited therein.

■ 3. Newbern argues that the court's instructions on damages under the breach of warranties count were in error, because they did not limit Newbern's liability to damages resulting from the sale of his shares alone. Again we disagree. The contract for the sale of 104,000 shares provided that the sellers were jointly and severally liable. Thus Newbern by the terms of the contract itself is liable for damages resulting from breaches of warranty as to the 104,000 shares. Further, the contract provided that G & M was to purchase as many of the other outstanding shares in Gas-Ice as it could. The damages incurred by plaintiff as to these remaining shares, therefore, were clearly foreseeable by Newbern, and a natural consequence of Newbern's conduct. *See, e. g.*, Restatement, Contracts, § 330.

■ 4. Newbern argues that the court should have had the jury return a special verdict, not a general one. He says that because elements of the two claims—violation of the securities laws and breach of contractual warranties—differed, the jury might have found a violation under one claim and assessed damages under another, and because a general verdict was returned, we do not know whether they did or not. The damages, however, would have been the same under either theory. The district court may, in its discretion, refuse to require that the jury return a special verdict. There was no abuse of discretion here. See Rule 49, F.R.Civ.P.; 5A Moore, Federal Practice, ¶ 49.03[1] (2d ed. 1971).

5. Newbern argues that the court erred in not giving Newbern's requested instructions concerning his representations to G & M as to Gas-Ice's future earnings. Before G & M decided to purchase the stock, Newbern had told G & M that Gas-Ice's earnings for that year would be about $155,000; the actual earnings totaled some $43,000. Newbern's position is that his statement was mere expression of opinion, and not actionable.

■ Under the securities law a reasoned and justified statement of opinion, one with a sound factual or historical

basis, is not actionable. Here, however, considering the gross disparity between prediction and fact, and also considering Newbern's other misrepresentations and failures to disclose, which were relevant to the accuracy of his prediction, we have no difficulty in finding this "prediction" to be actionable. *See, e. g.,* 1 *Bromberg, supra,* § 5.3 at 97; § 7.2(1) at 147–48; and cases cited therein.

■ 6. Newbern's other arguments go to the question of the amount of damages that should have been awarded. We do not consider his arguments in detail because it is clear to us that there was ample evidence to support the verdict for $160,000.

2. *The Appeal in No. 72–1287.*

A. *The Rule 37(c) Motion.*

On December 3, 1971, the judge issued an order in response to G & M's Rule 37(c) motion for expenses incurred as a result of Newbern's failure to admit. Newbern attacks this order on the ground that the district court was without jurisdiction to make it. We agree.

The relevant events occurred as follows:

1) On April 21, 1971, judgment was entered.

2) On July 7, 1971, Newbern filed a timely notice of appeal.

3) On July 16, 1971, G & M filed its Rule 37(c) motion.

4) On August 2, 1971, the court heard the motion.

5) On December 3, 1971, the court issued an order granting the motion in part.

The order provided:

"Plaintiff's Rule 37 motion is allowed in part:

$1,000 – Expenses

$7,500 – Attorney fees

IT IS ORDERED that the judgment herein be modified to add the sum of $8,500 to the total thereof."

The general rule is that

"The filing of a timely and sufficient notice of appeal has the effect of immediately transferring jurisdiction from the district court to the court of appeals with respect to any matters involved in the appeal. It divests the district court of authority to proceed further with respect to such matters, except in aid of the appeal, or to correct clerical mistakes . . . or in aid of execution of a judgment that has not been superseded, until the district court receives the mandate of the court of appeals." 9 Moore, Federal Practice, ¶ 203.11. *See also* Ruby v. Secretary of the Navy, 9 Cir., 1966, 365 F.2d 385; Maloney v. Spencer, 9 Cir., 1948, 170 F.2d 231; Rogers v. Consolidated Rock Products Co., 9 Cir., 1940, 114 F.2d 108.

■ The court's action in entertaining the motion and making its order does not fall within any of the exceptions to the rule. The order is not "in aid of the appeal." It is not a correction of a clerical error. It is not an order in aid of execution of judgment. Rather, the order is one which could have been made before judgment and notice of appeal, had G & M chosen to make its motion sooner. The fact that the motion is a belated one does not give the court jurisdiction to entertain it once jurisdiction of the case has passed to this court.

■ G & M argues that the matter of expenses to be reimbursed under Rule 37(c) relates to matters "not involved" in the appeal. We see no merit in this reasoning. It is true, for instance, that an appeal from an order granting or denying a preliminary injunction does not divest the district court of jurisdiction to proceed with the action on the merits —i. e., the merits are not matters "involved in the appeal." See Moore, supra, at 739. This is not the situation here: the proof plaintiff was required to make as a result of defendant's failure to admit was directly involved in the verdict and judgment in the main case. The

order purports to amend the judgment. The issue of reimbursement of expenses is not "involved" in this appeal only because plaintiff failed to raise the issue in a timely fashion.

G & M also argues that a holding that the court was without jurisdiction to entertain the motion would lead to a "race to the courthouse" to which this court should not give its blessing. It is true, as G & M points out, that Rule 37(c) is intended to provide posttrial relief. *See* 48 F.R.D. 541. And, as Moore notes, if the requested party denies the authenticity of documents or truth of facts, the requesting party then proves his case at the trial in the usual way and subsequently moves the court for the award of his expenses in putting on the unnecessary proof. 4A Moore, *supra,* ¶ 37.04. G & M seems to be asserting that the requesting party is required to wait until judgment before it may make its Rule 37(c) motion, and, should the other party have its notice of appeal ready for instant filing if verdict and judgment go against it, the requesting party must either win the race to the courthouse with its 37(c) motion or see the district court deprived of jurisdiction to consider it. However, there is no requirement that the requesting party make its motion only after there has been a judgment. At any feasible point during the trial it could make its motion, and the district court could rule on it before judgment, or before an appeal.

### B. *The Order regarding Payments on the Note.*

On November 30, 1971, the judge made an order directing that payments by G & M to the estate of the now deceased Mrs. Newbern on account of the notes that Mrs. Newbern had received from G & M in exchange for her stock in Gas-Ice, be made to the court in satisfaction of the judgment against her husband. The order was issued after a hearing was held to determine ownership of the notes.

The order provided, *inter alia*:

"It is not necessary for this court to decide at this time whether the notes in the hands of the executor are community property. It is clear that some beneficial interest in the notes is now, or in due course will become, an asset of the defendant. It is also clear that R. B. Newbern is attempting to hinder, delay, and defraud the plaintiff as a judgment creditor in the present case.

\*   \*   \*   \*   \*   \*

"IT IS ORDERED that the money due under any note given to Lula P. Newbern . . . as part of the purchase price of the stock which was the subject of this litigation shall be paid into court until a sufficient sum has been paid to satisfy the judgment herein."

We affirm.

Newbern argues that the September 28 order to show cause, which initiated the proceeding, was issued ex parte, and improperly so. There is nothing in this argument. Any defect in the ex parte nature of the proceeding was rectified by the October 14 noticed hearing.

Newbern argues that the court did not comply with the Federal Rules of Civil Procedure (specifically, Rule 69) and the relevant Oregon statutes. Rule 69 provides in part:

(a) *In General.* . . . The procedure . . . in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held, . . . except that any statute of the United States governs to the extent that it is applicable. In aid of the judgment . . . the judgment creditor . . . may obtain discovery from any person, including the judgment debtor, in the manner provided in these rules or in the manner provided by the practice of the state . . . district court is held.

O.R.S. 23.720 provides in part:

> *"Examination of judgment debtor; order subjecting property.* . . . if· . . . it appears that the judgment debtor has any property liable to execution, the court . . . shall make an order requiring the judgment debtor to apply the same in satisfaction of the judgment, . . . ."

■ The court followed the proper procedure. The proceeding was "in aid of execution." The court found that the judgment debtor had "property liable to execution," and made an order applying "the same in satisfaction of the judgment."

Newbern's last point is that the court was without jurisdiction to make the order. At the time the order was issued, Mrs. Newbern's estate was in probate. In his order the judge concluded that it will be determined that Newbern has a property interest in the notes. It is presumably in the probate proceedings that the determination will be made. When that happens, it will be no problem for the court to release that part of the paid-in-money that is not Newbern's.

Bankruptcy proceedings were pending against Newbern when the order was issued. G & M had filed a petition in the United States district court in Seattle asking that the defendant be adjudicated a bankrupt. Newbern argues that the bankruptcy court had exclusive jurisdiction over defendant's property.

G & M asked the bankruptcy referee to determine whether the notes were subject to execution, and that a receiver be appointed for the notes. The bankruptcy referee denied appointment of a receiver, and suggested that the determination of whether or not the notes were community property should be made in another court. On the same day, September 28, the Order to Show Cause was presented to and signed by the judge in this case.

Collier states:

> "Once the petition has been filed, the bankruptcy court has exclusive jurisdiction of the bankrupt's property, except when otherwise provided in the Act. Where a petition has been filed against an alleged bankrupt, another court has no power to seize, attach, fix a lien upon or otherwise affect the bankrupt's property by virtue of proceedings begun thereafter, *unless with the consent of the bankruptcy court* . . . ." (emphasis added) 4A Collier, Bankruptcy, ¶ 70.06.

The present case falls within this exception.

In No. 71–2561 the judgment is affirmed. In No. 72–1287, the order of December 3, 1971, made under Rule 37 (c), is vacated; the order of November 30, 1971, is affirmed; the case is remanded so that the court may consider G & M's motion under Rule 37(c) anew. G & M shall recover its costs on appeal.