**Gloria AREVALO, Petitioner,**

**v.**

**John ASHCROFT, Attorney General; Michael Garcia, Assistant Secretary of the Bureau of Immigration and Customs Enforcement; United States Department of Homeland Security; United States Bureau of Immigration and Customs Enforcement; Steven J. Farquharson, Interim Director of the United States Bureau of Immigration and Customs Enforcement; and Bruce Chadbourne, United States Bureau of Immigration and Customs Enforcement, Respondents.**

No. CIV.A. 03–10737–WGY.

United States District Court,
D. Massachusetts.

May 9, 2003.

Anthony Drago, Jr., Satran & Marino, Boston, MA, for Gloria Arevalo, Petitioner.

Frank Crowley, Immigration and Naturalization Service, Boston, MA, for U.S. Bureau of Immigration and Customs Enforcement, Respondent.

*MEMORANDUM*

YOUNG, Chief Judge.

## I. INTRODUCTION

The instant case presents a petition for a Writ of Habeas Corpus pursuant to 8 U.S.C. § 2241 (2000). Gloria Arevalo ("Ms.Arevalo") is an alien and a citizen of Guatemala. Compl. [Docket No. 1] ¶ 3. Ms. Arevalo concedes that she entered the United States illegally "at some time in 1986." Compl. ¶ 9. On September 8, 1986, Ms. Arevalo was ordered deported by an Immigration official in Los Angeles, California for entering without inspection. Warrant of Deportation, attached to Resp't

Mem. Opp'n [Docket No. 4] as Ex. A.[1] She was deported to Guatemala on or about September 11, 1986. Compl. ¶ 9. In May 1990, Ms. Arevalo reentered the United States illegally, without inspection, and has remained in the United States since her reentry. Compl. ¶ 10.

In August 1990, Ms. Arevalo's father—a legal permanent resident of the United States—filed a visa petition on her behalf, which was approved on October 4, 1990. Compl. ¶ 11. In 1996, Ms. Arevalo petitioned the Immigration and Naturalization Service ("INS") to adjust her status to that of an alien lawfully admitted for permanent residence. Compl. ¶ 11. The application to adjust status was not decided until January 29, 2002, when the INS notified Ms. Arevalo that her application could only be considered within the deportation proceedings already underway at the time she filed the application. INS Letter, attached to Compl. as Ex. F.

On January 17, 2003, the INS issued and served Ms. Arevalo with a Notice of Intent/Decision to reinstate the prior order of deportation and the INS detained her. Resp't Mem. Opp'n at 3. After considering Ms. Arevalo's statement contesting the INS reinstatement, the INS issued a final order of reinstatement of the prior deportation order on January 22, 2003. *Id.* at 3.

On January 21, 2003, Ms. Arevalo filed her petition for a writ of habeas corpus in this Court. This Court issued an order transferring the case to the Court of Appeals, which has treated the habeas petition as a petition for review under 8 U.S.C. § 1252(a) (2000). Ms. Arevalo also requested a stay of removal pending the appeal, and the Court of Appeals granted the stay on April 10, 2003. Furthermore, the Court of Appeals denied Ms. Arevalo's request for release *without prejudice* to her ability to seek such relief in the first instance in the district court.

Ms. Arevalo remains in the custody of the United States Department of Homeland Security (the "Department"). She has sought bail pending the resolution of her case before the First Circuit in June. This Court held a hearing on May 2, 2003 and ordered that Ms. Arevalo be released from detention, subject to various conditions of supervision. The Court stayed its order to allow the Department to appeal the Court's ruling to the First Circuit. The Court's order became effective at 5:00 P.M. on Monday, May 5, 2003. This memorandum serves to explicate the reasons for the Court's order.

## II. DISCUSSION

The Department contends that whether to keep Ms. Arevalo is a matter committed to its sound discretion. This Court rules, however, that the relevant statute authorizes neither such discretion nor the further detention of Ms. Arevalo.

The Department has articulated its position clearly in its memoranda and at the hearing on May 2, 2003. Federal law requires that an alien subject to a final order of removal, like Ms. Arevalo, be detained for a "Removal Period" of ninety (90) days. 8 U.S.C. § 1231 (2000). The Department concedes that the official Removal Period has now lapsed in Ms. Arevalo's case.[2] The Department now contends, however, that the Removal Period is in "suspension" pursuant to section 1231(a)(1)(C) and that the statute authorizes Ms. Arevalo's continued detention, subject only to the De-

---

**1.** Ms. Arevalo concedes that she was deported under the alias, "Maria Guadalupe Sillas-Mendoza." Compl. ¶ 9.

**2.** The Department concedes that the Removal Period commenced on the date of the January 22, 2003 order Reinstating the Final Order of Removal in this case.

partment's discretion.[3] The statute provides that:

> [t]he removal period shall be extended beyond a period of 90 days and the alien *may* remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or *conspires or acts to prevent the alien's removal* subject to an order of removal.

8 U.S.C. § 1231(a)(1)(C) (emphasis added).

The Department maintains that Ms. Arevalo "act[ed] to prevent" her removal by seeking a stay of deportation pending her appeal before the Court of Appeals. The Eleventh Circuit has suggested in a footnote of a per curiam decision that an alien who seeks a stay of deportation "acts to prevent" her removal. *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 n. 4 (11th Cir.2002). This Court declines to follow the reasoning in *Akinwale* for several reasons.

First, such an interpretation of the statutory provision violates an important canon of statutory construction. While it is true that seeking relief in the Court of Appeals is an "act," in the broadest sense of the word, that—upon order the Court of Appeals—"prevents" the Department from removing Ms. Arevalo, such an interpretation is unreasonable and violates the venerable *noscitur a sociis* canon, which instructs that "the meaning of an unclear word or phrase should be determined by the words immediately surrounding it." Black's Law Dictionary 1084 (7th ed.1999); *see also Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 575, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995) (holding that "a word is known by the company it keeps"); *Jarecki v. G.D. Searle & Co.*, 367 U.S. 303, 307, 81 S.Ct.

1579, 6 L.Ed.2d 859 (1961) ("The maxim *noscitur a sociis*, . . . while not an inescapable rule, is often wisely applied where a word is capable of many meanings in order to avoid the giving of unintended breadth to the Acts of Congress."). The "company" surrounding the phrase "acts to prevent" in the instant case includes a provision respecting an alien's failure to act in good faith. In addition, the word "conspires" connotes secret improper or unlawful action. *See* The American Heritage Dictionary 314 (2d ed.1985) (to "conspire" defined as "[t]o plan together secretly to commit an *illegal or evil act*") (emphasis added). The surrounding words, therefore, imbue "acts to prevent" with a tincture of bad faith, dishonesty, or improper behavior. Such language simply does not contemplate precluding an alien from seeking legal avenues of relief in a court of competent jurisdiction. To hold otherwise would be to infuse unwarranted pejorative color into the pursuit of legitimate legal relief.

Second, other cases invoking this section of the statute have involved dishonest or improper behavior on the part of an alien. *See, e.g., Powell v. Ashcroft*, 194 F.Supp.2d 209, 210 (E.D.N.Y.2002) (holding that suspension was proper where alien frustrated deportation efforts by repeatedly giving false and confusing statements regarding his name, nation of birth, citizenship, and particulars of his entrance into the United States); *Seretse–Khama v. Ashcroft*, 215 F.Supp.2d 37, 52 (D.D.C.2002) (holding that alien's statement of a lack of desire to return to his country of origin does not amount to bad faith under subsection (a)(1)(C)); *Riley v. Greene*, 149 F.Supp.2d 1256, 1262 (D.Colo.2001) (holding that alien

---

**3.** This is the sole argument that the Department proceeded to press at the May 2, 2003 hearing.

who admitted he refused to complete travel arrangements and refused to name any country for deportation could be held beyond 90-day period under subsection (a)(1)(C)); *Sango–Dema v. District Director,* 122 F.Supp.2d 213, 221 (D.Mass. 2000) (Saris, J.) (holding that alien who refused to provide passport and birth certificate and refused to communicate with embassy officials or complete application for documents could be held beyond 90-day period under subsection (a)(1)(C)); *Ncube v. INS,* No. CIV.A.98–0282–HB-AJP, 1998 WL 842349, *16 (S.D.N.Y. Dec. 2, 1998) (unpublished opinion) (holding that alien failing to provide INS with passport or proof of identification or nationality could be held longer than 90–day period);[4] *cf. Ford v. Quarantillo,* 142 F.Supp.2d 585, 588 (D.N.J.2001) (holding that alien could not be further detained under subsection (a)(1)(C) for misrepresentations that were later corrected); *but see Bini v. Aljets,* 36 Fed.Appx. 868, 869 (8th Cir. 2002) (unpublished opinion) (holding that alien detention could exceed ninety days because alien was convicted of crimes of moral turpitude and because he sought—and obtained—a stay of removal).[5] In the instant case, Ms. Arevalo has simply exercised her statutory rights. Any sanctions, never mind deprivation of liberty, are not only incongruent with the statutory language, but are also illogical and fundamentally unfair.

Finally, to the extent the reasoning in this opinion is inconsistent with the Eleventh Circuit's decision in *Akinwale,* that decision is not binding on this Court and is otherwise unpersuasive.

The statute otherwise does not authorize detention beyond the Removal Period. Indeed, the statute explicitly contemplates release of the alien upon expiration of the Removal Period in section 1231(a)(3), wherein it provides for supervision and conditions upon release. Neither the statute nor sound policy counsel in favor of Ms. Arevalo's indefinite detention subject only to the Department's discretion.

## III. CONCLUSION

Accordingly, Ms. Arevalo's request for bail was ALLOWED. The Order was stayed until 5:00 P.M. on Monday, May 5, 2003.

---

**4.** For the propriety of citing an unpublished opinion, see *Anastasoff v. United States,* 223 F.3d 898, 899–905 (8th Cir.2000) (Arnold, J.) (holding that unpublished opinions have precedential effect), *vacated as moot,* 235 F.3d 1054 (8th Cir.2000) (en banc), *Giese v. Pierce Chem. Co.,* 43 F.Supp.2d 98, 103 (D.Mass. 1999) (relying on unpublished opinions' per-suasive authority), and Richard S. Arnold, *Unpublished Opinions: A Comment,* 1 J.App. Prac. & Process 219 (1999). *See also* Richard L. Neumeier, *Ethics of Appellate Advocacy: Unpublished Opinions* (Oct.2001) (unpublished seminar paper, on file with author).

**5.** *See supra* note 4.