Victor **MARTINEZ**, Petitioner,

v.

Alberto **GONZALES**, et al., Respondent.

No. CV 06–7609 TJH AJW.

United States District Court, C.D. California, Western Division.

Aug. 17, 2007.

Ahilan T. Arulanantham, Peter J. Elias-berg, Ranjana Natarajan, Los Angeles, CA, Cecillia D. Wang, Monica M. Ramirez, San Francisco, CA, Jayashri Srikantiah, Stanford, CA, Judy Rabinovitz, New York City, for Petitioner.

Robert I. Lester, Los Angeles, CA, for Respondent.

## ORDER ADOPTING REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

HATTER, District Judge.

Pursuant to 28 U.S.C. § 636(b)(1)(C), the Court has reviewed the entire record in this action, the attached Report and Recommendation of Magistrate Judge ("Report"), and the objections thereto. Good cause appearing, the Court concurs with and adopts the findings of fact, conclusions of law, and recommendations contained in the Report after having made a *de novo* determination of the portions to which objections were directed.

**IT IS SO ORDERED.**

## REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

WISTRICH, United States Magistrate Judge.

Petitioner, a native and citizen of Ecuador, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 ("Petition"). Petitioner is challenging his detention by the Bureau of Immigration and Customs Enforcement of the Department of Homeland Security ("ICE") for over four years while removal proceedings have been pending against him. Respondents filed an amended answer to the petition ("Answer"), and petitioner filed a traverse ("Traverse").

### Proceedings

The procedural history of this case is lengthy, and it is unnecessary to describe that history in full here. [*See* Petition 5–9; Answer 2–10]. Briefly summarized, the procedural facts relevant to this petition are as follows.

Petitioner was admitted to the United States as a lawful permanent resident on July 19, 1970, at age 14, and he has resided in the Los Angeles area for over 36 years. [Petition 5 & Ex. 1; Answer, Ex. 1]. Petitioner has multiple criminal convictions. [Petition 5; Answer 3 & Ex. 1]. On or about September 4, 2002, petitioner was taken into custody by the Immigration and Naturalization Service ("INS").[1] Based on convictions for possession of a controlled substance in 1987, second-degree burglary in 1996, and petty theft in 2001, petitioner was charged with removability for convictions of crimes involving moral turpitude and an aggravated felony. [Petition 5, 7–8; Answer 4 & Ex. 4].

On November 1, 2002, shortly after petitioner was taken into custody by ICE, an immigration judge ("IJ") denied petitioner's application for release on bond. [Petition 5 & Ex. 2].

On November 5, 2002, an IJ ordered petitioner removed to Ecuador. [Petition 8; Answer 4 & Ex. 7]. The BIA summarily affirmed the IJ's removal order on July 30, 2003. [Petition 8; Answer 4 & Ex. 8].

Petitioner filed a pro se petition for review of his removal order in the Ninth Circuit on August 22, 2003. A stay of

---

1. The INS was abolished on March 1, 2003, and its functions were transferred to the Department of Homeland Security. *See* Homeland Security Act of 2002, Pub.L. No. 107–296, § 471, 116 Stat. 2135, 2205 (2002). References to ICE include the INS.

removal was issued. The Ninth Circuit dismissed the petition for lack of jurisdiction, and the United States Supreme Court denied his petition for certiorari. The stay of removal was lifted on March 31, 2005. [Petition 8 n. 5; Answer 4–5].

On October 28, 2004, after petitioner had been detained for more than two years, ICE conducted a "file custody review" without a hearing. ICE issued a decision continuing petitioner's detention on December 1, 2004. About a year later, a second file custody review was conducted. On December 8, 2005, after petitioner had spent more than three years in ICE custody, ICE issued another decision continuing petitioner's detention. [Petition 6 & Exs.3–6; Answer 10 & Exs. 43, 45].

Petitioner challenged his removal order in a pro se habeas petition filed in the United States District Court for the Southern District of California (where he was incarcerated) on March 7, 2005.[2] [Petition 8; Answer 6 & Exs. 22–23]. The district court issued a stay of removal on March 23, 2005 "pending the final determination of this matter," and it denied the government's motion to vacate the stay. [Answer 6–7, Ex. 25 at 154, Ex. 26]. On June 30, 2005, the district court held that it lacked subject matter jurisdiction over the petition pursuant to the Real ID Act of 2005.[3] It ordered the petition transferred to the Ninth Circuit Court of Appeals, where it was filed and remains pending. [See Martinez v. Gonzales, No.05–73975 (9th Cir. filed July 5, 2005); Answer, Ex. 28]. On November 21, 2005, the Ninth Circuit granted petitioner's request for a stay of removal, and the stay has not been vacated. [Answer, Ex. 28 at 164].

On June 27, 2005, petitioner filed a pro se habeas petition challenging his detention in the United States District Court for the Southern District of California (where he was still incarcerated). The district court erroneously held that it lacked jurisdiction and transferred the petition to the Ninth Circuit Court of Appeals, which remanded the petition back to the district court in an order filed January 30, 2006. [Petition 7; Answer 7 & Exs.29–31]. The district court did not reach the merits of petitioner's challenge to the legality of his detention because, after his petition was transferred back to the district court, petitioner's motion for voluntary dismissal was granted. [See Martinez v. Gonzales, No. CV05–1307 JM (AJB) (S.D. Cal. filed October 17, 2006); Answer 7 & Exs. 29, 32]. Petitioner voluntarily dismissed that petition because he had joined as a co-petitioner in a habeas petition filed in this court challenging prolonged immigrant detention. That case was dismissed without prejudice to petitioner as improperly joined. [See Petition 7 & n. 4; see also Mussa v. Gonzales, No.CV–062749 TJH (JTL) (C.D.Cal. October 17, 2006) ].

Having obtained counsel, petitioner filed this petition challenging the legality of petitioner's detention on November 30, 2006. Petitioner filed a motion for a preliminary injunction, which was granted by District Judge Hatter on January 3, 2007. He ordered that petitioner be "afforded an individual hearing before an immigration judge concerning whether his prolonged detention is justified" and that petitioner

**2.**

**3.** On May 11, 2005, the REAL ID Act of 2005, Pub.L. 109–13, Div. B, 119 Stat. 231 (2005) was signed into law. Among other things, the REAL ID Act amended section 242 of the INA, 8 U.S.C. § 1252(a)(5), so as to "elimi-

nate[ ] district court habeas corpus jurisdiction over orders of removal and vest[ ] jurisdiction to review such orders exclusively in the courts of appeals." *Puri v. Gonzales*, 464 F.3d 1038, 1041 (9th Cir.2006)(citing *Martinez–Rosas v. Gonzales*, 424 F.3d 926, 928–929 (9th Cir.2005)).

be "released on reasonable conditions unless the government shows by clear and convincing evidence that [he] presents a sufficient danger or risk of flight to justify his detention in light of how long he has been detained already and the likelihood of his case being finally resolved in favor of the government in the reasonably foreseeable future." [Order filed January 3, 2007].

Pursuant to District Judge Hatter's order, a bond hearing was conducted before IJ D.D. Sitgraves, who ordered petitioner released on $10,000 bond in a written decision dated February 8, 2007. [Petitioner's Supplemental Memorandum filed May 21, 2007 ("Petitioner's Suppl. Mem."), Ex. B]. The IJ found that the government "has failed to justify [petitioner's] prolonged detention. The government has failed to meet their burden of proof establishing by clear and convincing evidence that [petitioner] presents a sufficient danger or flight risk." [Petitioner's Suppl. Mem., Ex. B at 5]. The IJ concluded that he could not "reasonably speculate" about the likelihood of petitioner's case being finally resolved in favor of the government in the reasonably foreseeable future because he was only "provided with speculation during this hearing as to how long it would take" to finally resolve petitioner's pending petitions before the Ninth Circuit. [Petitioner's Suppl. Mem., Ex. B at 5].

Petitioner posted bond and was released on February 12, 2007. [Petitioner's Suppl. Mem., Ex. B; Joint Status Report filed February 26, 2007 at 1]. The government has appealed that order to the Board of Immigration Appeals ("BIA"), where it remains pending. [Petitioner's Suppl. Mem. 1]. In addition, the government filed an appeal in the Ninth Circuit from this court's order granting petitioner's request for a preliminary injunction. That appeal is pending. [*See MARTINEZ v. GON-*

*ZALES,* No.07–55332, 2007 WL 1508308 (9th Cir.2007) ].

In their joint status report, the parties state that there are no factual disputes and that two legal issues remain to be resolved. [Joint Status Report filed February 26, 2007 at 1–2]. The first legal issue is whether petitioner was detained under 8 U.S.C. § 1226, as petitioner contends, or under 8 U.S.C § 1231, as respondents contend. The second legal issue is whether petitioner must be released immediately, as petitioner contends, or alternatively must be given either a hearing before an IJ or, as respondents contend, a paper "file custody review" to determine whether his detention is justified. The parties jointly requested that this court adjudicate the merits of the habeas petition. [Joint Status Report filed February 26, 2007 at 2].

### Discussion

#### Subject matter jurisdiction

Before addressing the disputed issues identified by the parties, the court must consider whether it has jurisdiction to reach the merits of the petition. *See Nadarajah v. Gonzales,* 443 F.3d 1069, 1075 (9th Cir.2006)(holding that although neither party had raised the question of the court's jurisdiction to consider a § 2241 petition, the court "was obligated to consider it *sua sponte* ")(citing *Justices of Boston Mun. Court v. Lydon,* 466 U.S. 294, 300–302, 104 S.Ct. 1805, 80 L.Ed.2d 311 (1984)).

#### (1) Applicability of REAL ID Act of 2005

 The first jurisdictional issue presented in this case is whether the REAL ID Act of 2005 divests this court of jurisdiction over the petition. Although the REAL ID Act of 2005 eliminated district court jurisdiction over habeas corpus petitions challenging orders of removal, *see*

*Puri,* 464 F.3d at 1041, district courts retain subject matter jurisdiction over section 2241 petitions challenging the legality of an alien's detention. *See Nadarajah,* 443 F.3d at 1075 ("By its terms, the jurisdiction-stripping provision [of the REAL ID Act] does not apply to federal habeas corpus petitions that do not involve final orders of removal."). The Ninth Circuit so held when it granted the government's motion to remand back to the United States District Court for the Southern District of California a section 2241 petition petitioner filed in that court challenging the legality of his detention by ICE. *See Martinez–Jaramillo v. Gonzales,* No.05–75161 (9th Cir. January 20, 2006)(unpublished order); Answer, Ex. 31. In *Martinez–Jaramillo,* the Ninth Circuit held that the district court erred in transferring the petition to the court of appeals pursuant to the REAL ID Act of 2005 because the petition "challenged [petitioner's] detention, not a final order of removal." Answer, Ex. 31 (citing *Zadvydas v. Davis,* 533 U.S. 678, 687–688, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001)(holding that " § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to" detention after the 90–day "removal period" defined in 8 U.S.C. 1231(a)(1)) and *INS v. St. Cyr,* 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001)(holding that habeas jurisdiction under section 2241 was not repealed by the Antiterrorism and Effective Death Penalty Act of 1996 or the Illegal Immigration Reform and Immigrant Responsibility Act of 1996)).

Accordingly, this court has jurisdiction under section 2241 to consider petitioner's challenge to the lawfulness of his detention by ICE.

### (2) Effect of appeal from order granting preliminary injunction

 The second jurisdictional issue presented by this case is the effect of the government's appeal from the order granting a preliminary injunction on this court's jurisdiction to adjudicate the merits of the petition. As a general rule, "[t]he filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982) (per curiam); *see G & M, Inc. v. Newbern,* 488 F.2d 742, 746 (9th Cir.1973)("We have held that jurisdiction over a case is immediately transferred to the court of appeals upon the filing of a sufficient notice of appeal 'with respect to any matters involved in the appeal.' ") (quoting 9 J. Moore, Federal Practice ¶ 203.11 (2d ed.1971)) (emphasis added). However, "an appeal from an order granting or denying a preliminary injunction does not divest the district court of jurisdiction to proceed with the action on the merits-I. e., the merits are not matters 'involved in the appeal.' " *G & M,* 488 F.2d at 746; *see Webb v. GAF Corp.,* 78 F.3d 53, 55 (2d Cir.1996)(per curiam)(holding that although the filing of a notice of appeal ordinarily divests the district court of jurisdiction over issues decided in the order being appealed, the appeal of a preliminary injunction did not divest the district court of jurisdiction to enter a permanent injunction).

Accordingly, the government's appeal of the preliminary injunction order does not preclude this court from issuing a ruling on the merits of the petition, as both parties have requested.

### Controlling detention statute

 Petitioner contends that his detention is governed by 8 U.S.C. § 1226. [*See* Petition 2–3 & n. 3; Traverse 2; Joint Status Report 1]. Section 1226(a) states that "an alien may be arrested and detained pending a decision on whether the

alien is to be removed from the United States," and that the Attorney General may elect to continue to detain the arrested alien or release the alien subject to certain conditions. *See* 8 U.S.C. § 1226(a) & (c). Section 1226(c)(1)(B) provides that where an alien "is deportable by reason of having committed" two or more crimes involving moral turpitude under 8 U.S.C. § 1227(a)(2)(A)(ii) or an aggravated felony under 8 U.S.C. § 1227(a)(2)(A)(iii), "the Attorney General shall take" the alien into custody. Because petitioner is prima facie removable by virtue of his criminal convictions, the applicable provision is section 1226(c).

The government contends that petitioner's detention is controlled by 8 U.S.C. § 1231(a). [*See* Answer 10–11; Joint Status Report 1]. Section 1231(a) states that except as otherwise provided in that section, "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')....[¶] During the removal period, the Attorney General shall detain the alien." 8 U.S.C. § 1231(a)(1)(A) & (C). Aliens who are removable by reason of having committed two or more crimes of moral turpitude or an aggravated felony, or who have been "determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period ...." 8 U.S.C. § 1231(a)(6). If, however, "the removal order is judicially reviewed and if a court orders a stay of the removal of the alien," the removal period begins on "the date of the court's final order." 8 U.S.C. § 1231(a)(1)(B)(ii).

Petitioner's position is correct. It is undisputed that a petition for review of petitioner's final order of removal is pending before the Ninth Circuit, and that a

stay of removal remains in effect. Section 1231 authorizes the Attorney General to detain aliens during, and in certain circumstances beyond, the "removal period," but if a court orders a stay of removal, the removal period does not begin until "the date of the court's final order." 8 U.S.C. § 1231(a)(1)(B)(ii). Because that date has not arrived, the removal period has not begun, and therefore section 1231 does not govern petitioner's detention.

Section 1226, on the other hand, authorizes the Attorney General to detain aliens pending a determination of removability, and it makes detention mandatory if the alien has committed criminal offenses that fall within its reach. Where, as here, the statutory removal period has not yet begun, an alien who has been charged with removability as a criminal alien is detained under section 1226. *See Tijani v. Willis*, 430 F.3d 1241, 1242 (9th Cir.2005)(reversing and remanding with instructions to release the petitioner, who been detained pending appeal for two years and eight months under section 1226(c), on bail unless an IJ determined after a hearing that the government had proved that the petitioner was flight risk or a danger to the community); *see also Tijani*, 430 F.3d at 1243–1250 & n. 7 (Tashima, J., concurring)(noting that the petitioner was detained under section 1226 because "this court has stayed his removal pending its review of the BIA's decision" and therefore the petitioner "has not entered his 90–day removal period under" section 1231(a)); *Kothandaraghipathy v. Department of Homeland Sec.*, 396 F.Supp.2d 1104, 1107 (D.Ariz.2005)(holding that because the Ninth Circuit had granted the petitioner a stay of removal, his current detention is pursuant to the pre-removal order detention statute, 8 U.S.C. § 1226, rather than the post-removal order detention statute, 8 U.S.C. § 1231).[4] According-

---

**4.** This conclusion also is consistent with the Ninth Circuit's order affirming the dismissal

ly, the issue is whether petitioner is entitled to relief from his detention pursuant to section 1226, and if so, the nature of that relief.[5]

**Legality of petitioner's detention under section 1226(c)**

■ Relying on the principles articulated by the Ninth Circuit in *Nadarajah*, petitioner argues that he is entitled to immediate release from detention because "his prolonged and indefinite detention" is not authorized by section 1226(c). In *Nadarajah*, the Ninth Circuit ordered released from detention an alien who had been detained pursuant to "the general immigration detention statutes," 8 U.S.C. §§ 1225(b)(1)(B)(ii) and (b)(2)(A), for more than five years pending a final determina-

tion of removability.[6] The petitioner remained in detention "without any established time line for a decision on when he may be released from detention." *Nadarajah*, 443 F.3d at 1075–76.

"[C]onsistent with the construction given by the Supreme Court to similar statutes," the Ninth Circuit held that "the general immigration detention statutes do not authorize the Attorney General to incarcerate detainees for an indefinite period." *Nadarajah*, 443 F.3d at 1078 (citing *Zadvydas*, 533 U.S. at 701, 121 S.Ct. 2491).[7] Rather,

the detention must be for a reasonable period, and only if there is a "significant likelihood of removal in the reasonably foreseeable future. After a presump-

---

of a prior habeas petition filed by petitioner alleging that the IJ denied him due process by failing properly to consider mitigating evidence at his bail hearing. *See MartinezJaramillo v. Thompson*, No. 03–56282, 2005 WL 96538, at *1 (9th Cir.2005). The Ninth Circuit declined to decide whether petitioner was held under section 1226(c) or section 1231(a)(2). It also declined to decide whether the recall of its mandate dismissing petitioner's petition for direct review of his order of removal pending resolution of his petition for writ of certiorari "stalled" the beginning of the removal period. It held, however, that even if the Attorney General's authority to detain petitioner under section 1231(a)(2) had been "withdrawn" on account of the recall of the mandate, petitioner was still subject to mandatory detention under section 1226(c). *Martinez–Jaramillo*, 2005 WL 96538, at *2–3.

5. This conclusion obviates the need to consider petitioner's contention that his detention is unlawful even if section 1231 governs his detention.

6. In pertinent part, section 1225(b)(1)(B)(ii) states that "[i]f the [asylum] officer determines at the time of the interview [upon arrival in the United States] that an alien has a credible fear of persecution ..., the alien shall be detained for further consideration of the application for asylum," and section 1225(b)(2)(A) states that "in the case of an alien who is an applicant for admission, if the

examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under 8 U.S.C. § 1229a."

7. In *Zadvydas*, the Supreme Court

reasoned that a statute permitting indefinite detention of an alien would raise a serious constitutional problem under the Fifth Amendment's Due Process Clause. Applying the constitutional avoidance doctrine in order to avoid this potential problem, *Zadvydas* held that § 1231(a)(6), read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal and does not permit indefinite detention. *Zadvydas* then concluded that once removal is no longer reasonably foreseeable, continued detention is no longer authorized by [§ 1231(a)(6)].... [¶][U]nder *Zadvydas*, a presumptively reasonable period of post-removal detention is limited to six months, and that after this period expires, an alien must be released if there is no significant likelihood of removal in the reasonably foreseeable future.

*Tuan Thai v. Ashcroft*, 366 F.3d 790, 794 (9th Cir.2004)(internal quotation marks and alteration omitted)(citing *Zadvydas*, 533 U.S. at 689–690, 699, 121 S.Ct. 2491).

tively reasonable six-month detention, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Nadarajah*, 443 F.3d at 1079–80 (quoting *Zadvydas*, 533 U.S. at 701, 121 S.Ct. 2491).

The Ninth Circuit concluded that its statutory construction analysis in *Nadarajah* was "bolstered by considering the immigration statutes as a whole," and in particular by reference to Patriot Act provisions authorizing the detention of suspected terrorists or "other carefully defined categories" of aliens for more than six months, subject to specific limitations and procedural protections not provided for in the "general immigration detention statutes." *Nadarajah*, 443 F.3d at 1078–1080.

Characterizing "the six-month period as the touchstone of reasonableness," the Ninth Circuit observed that "the Supreme Court has given further guidance as to what it considers to be a 'reasonable' length of detention for aliens" convicted of a crime and detained under section 1226(c) pending a determination of removability. *Nadarajah*, 443 F.3d at 1080 (citing *Demore v. Kim*, 538 U.S. 510, 513, 529–531, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003)). In *Demore*, "the Supreme Court held that the government could detain aliens who had been convicted of a crime for 'the brief period necessary for their removal proceedings,'" and although the alien in that case "had been detained for over six months, which was 'somewhat longer than average,'" the Supreme Court "viewed that 'temporary' confinement as permissible." *Nadarajah*, 443 F.3d at 1080 (quoting *Demore*, 538 U.S. at 530–531, 123 S.Ct. 1708); *see also Nadarajah*, 443 F.3d at 1081 & n. 4 (concluding that "[t]here is no indication anywhere in *Demore* that the

Court would countenance an indefinite detention," and noting that "references to the brevity and limited nature of the confinement are found throughout" *Demore* ). The Ninth Circuit reasoned that the petitioner's detention in *Nadarajah* was "more akin to the situation in *Zadvydas*," which involved " 'indefinite' and 'potentially permanent' " detention. *Nadarajah*, 443 F.3d at 1080 (quoting *Zadvydas*, 533 U.S. at 690–691, 121 S.Ct. 2491). "Nonetheless, *Demore* endorses the general proposition of 'brief' detentions, with a specific holding of a six-month period as presumptively reasonable." *Nadarajah*, 443 F.3d at 1080. Thus, "[a] detention of nearly five years—ten times the amount of time the Supreme Court has considered acceptable absent a special showing—is plainly unreasonable under any measure," including section 1226(c). *Nadarajah*, 443 F.3d at 1080.

*Nadarajah* does not cite *Tijani*'s brief opinion holding unlawful an alien's prolonged detention under section 1226, but the holdings of the two cases are consistent. To avoid deciding the constitutionality of section 1226(c) as applied to the petitioner in that case, who had been detained for more than two years and eight months pending a direct appeal of his order of removal, *Tijani* construed the

> the authority conferred by § 1226(c) as applying to expedited removal of criminal aliens. Two years and eight months of process is not expeditious; and the foreseeable process in this court, where the government's brief in Tijani's appeal of the removal was only filed last month after two extensions of time, is a year or more.

*Tijani*, 430 F.3d at 1242. *Tijani* held that the petitioner was entitled to release unless the government provided him with a bond hearing and established that he was a flight risk or a danger to the community.

*Tijani,* 430 F.3d at 1242.[8] In a concurring opinion examining the merits of the petitioner's claims, Judge Tashima concluded, among other things, that the petitioner was entitled to be released because his detention was unreasonable under *Demore* and *Zadvydas. See Tijani,* 430 F.3d at 1249–1250 (Tashima, J., concurring).

The government contends that *Nadarajah* does not control because it is limited to its facts or its facts are distinguishable, and because it arose under a different detention statute. [*See* Answer 12–19; Joint Status Report 2–3]. *Nadarajah* involved an alien who, like petitioner, had been detained for five years, but unlike petitioner, the petitioner in *Nadarajah* enjoyed rare success at the administrative level by winning relief from removal from the IJ and the BIA. His case had been referred to the Attorney General for review, but his successful applications for relief made his removal unlikely, and he had not filed any court appeals which even arguably prolonged his detention. The government, however, never persuasively explains why that difference matters.

The Ninth Circuit did not limit its holding in *Nadarajah* to the facts of that case or otherwise indicate that it was crafting a rule of limited application because of the relatively unusual posture of the petitioner's application for relief from removal. Instead, it relied upon principles of statutory construction in light of existing Supreme Court authority to hold that the "general immigration detention statutes" do not authorize indefinite detention, and that an alien detained under those statutes beyond the presumptively reasonable six-month period is entitled to release with appropriate conditions when the government does not rebut the alien's showing that his removal is not reasonably foreseeable. *See Nadarajah,* 443 F.3d at 1079–1080, 1084. It concluded that because the petitioner in *Nadarajah* had shown that his removal was improbable, and because his case had been referred to the Attorney General with no timetable for a decision, he had succeeded in showing that his removal was not reasonably foreseeable, and the government had not rebutted that showing. That conclusion, coupled with "the unreasonable length" of the petitioner's detention up to that point, justified his immediate supervised release. *Nadarajah,* 443 F.3d at 1082.

Under *Nadarajah,* petitioner's continued prolonged detention is not authorized by the statute under which he is detained. Like the petitioner in *Nadarajah,* petitioner has been detained for more than five years, much longer than the six-month period described by the Ninth Circuit as presumptively reasonable under the general immigration detention statutes. *See Nadarajah,* 443 F.3d at 1080 ("A detention of nearly five years—ten times the amount of time the Supreme Court has considered acceptable absent a special showing—is plainly unreasonable under any meas-

---

8. *Tijani* is distinguishable from *Nadarajah* in that the latter case ordered the petitioner released on conditions set by the Attorney General, while the former ordered that petitioner be given a bond hearing (or be released if a bond hearing was not timely held). However, it is clear from *Nadarajah* that no useful purpose would have been served by conducting a bond hearing because the court also held that (1) ICE abused its discretion in denying the petitioner parole into the United States because there was no facially plausible evidence that his detention was in the public interest or that his release posed a risk to national security; (2) humanitarian release was warranted on health grounds because the petitioner's health was deteriorating in custody; and (3) the petitioner also was entitled to release pending appeal under Fed. R.App. P. 23(b) because he had shown both a probability of success on the merits and that the balance of hardships tipped in his favor. *Nadarajah,* 443 F.3d at 1082–1084.

ure."); *Tijani*, 430 F.3d at 1242 (holding that a detention of over two years and eight months was not within the authority conferred by section 1226(c)).

The government also argues that *Nadarajah* is distinguishable for other reasons. Unlike the petitioner in *Nadarajah*, who was detained under section 1225(b), petitioner's detention is governed by section 1226(c). As explained above, however, the Ninth Circuit's reading of *Demore* in *Nadarajah* indicates that section 1226(c), like section 1225(b), should be construed to prohibit indefinite detention and to contain the same reasonableness limitations on detention as section 1225(b). The Ninth Circuit interpreted *Demore* to stand for the proposition that a "brief" detention of no more than six months is presumptively reasonable for aliens detained under section 1226(c). *See Nadarajah*, 443 F.3d at 1080–1081 & n. 4. Although section 1226(c) makes the pre-removal period detention of "criminal aliens" mandatory, section 1226(c) is not one of the specialized provisions authorizing the detention for longer than six months of terrorists and other national security threats which the Ninth Circuit distinguished from the "general immigration detention statutes" subject to the reasonableness limitations described in *Nadarajah*.

The government also contends that the length of petitioner's detention should not weigh in favor of his release because he "has acted to prevent his removal" by filing two petitions for review and by obtaining a stay of removal. Respondents argues that these acts suspend or toll the removal period under 8 U.S.C. § 1231(a)(1)(C) and therefore that petitioner's continued detention is authorized. [*See* Answer 10–12].

Section 1231 governs the detention during and after the "removal period" of aliens who have been ordered removed. For the reasons explained above, petition-

er's removal period has not begun, and petitioner's detention is governed not by section 1231 but by section 1226. Because the removal period has not yet begun, petitioner's direct appeals and issuance of a stay of removal cannot have suspended or tolled that period under section 1231(a)(1)(C).

Even if section 1231 applied to petitioner's case, it expressly authorizes extending the removal period and an alien's detention beyond 90 days only "if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C). Nothing in that statutory language suggests that an alien's exercise of his right to seek judicial review of an order of removal qualifies as "conspir[ing] or act[ing] to prevent" his removal within the meaning of the statute, which, which specifically applies to aliens who fail or refuse to act in "good faith" in effecting their removal. Moreover, "the word 'conspires' connotes secret, improper or unlawful action," and thus the remaining text of this section "imbue[s the phrase] 'acts to prevent' with a tincture of bad faith, dishonesty, or improper behavior," rather than contemplating additional detention for "an alien from seeking legal avenues of relief in a court of competent jurisdiction." *Arevalo v. Ashcroft*, 260 F.Supp.2d 347, 349 (D.Mass.2003)(holding that an alien who "simply exercised her statutory rights" by seeking a stay of deportation pending appeal did not "act to prevent" her removal under section 1231(a)(1)(C), and collecting cases); *see, e.g., Pelich v. I.N.S.*, 329 F.3d 1057, 1059 (9th Cir.2003)(holding that the "proscription against indefinite detention articulated in" *Zadvydas* did not apply to detention under section 1231(a)(1)(C) where the petitioner's detention was indefinite only because he

refused to cooperate with efforts to effect a removal order by "steadfastly refus[ing] to fill out" a Polish passport application and providing conflicting information regarding his name and background, and concluding that a detainee "cannot argue that there is no significant likelihood of removal in the reasonably foreseeable future if the detainee controls the clock"); *Lema v. I.N.S.*, 341 F.3d 853, 854 (9th Cir.2003)(holding that an alien subject to a removal order who misrepresented his nationality to a consular official when applying for travel documents and refused to reapply "cannot meet [his] burden to show there is no significant likelihood of removal in the reasonably foreseeable future," and that the alien's continued detention therefore was authorized under section 1231(a)(1)(C)).

In addition, it would be anomalous and inconsistent to conclude that seeking judicial review and obtaining a stay of removal are "acts to prevent" removal that can lead to *suspension* of the removal period under section 1231(a)(1)(C) when the preceding paragraph of the same statute expressly provides that "if a removal order is judicially reviewed" and "if a court orders a stay of removal," the removal period *does not even begin* until that process is complete, on the date the court issues its final order. 8 U.S.C. § 1231(a)(1)(B)(ii).

When an alien petitions for judicial review of a removal order, it is virtually certain that his or her appeal will delay removal by some period of time even if it does not succeed in preventing it, but to suggest that the petitioner therefore "holds the keys" to his release from detention ignores the reality that the petitioner's conduct is merely one factor among many that affects the length of the judicial review process. For example, petitioner filed a pro se habeas petition challenging his detention in the Southern District of California in June 2005. [*See* Answer 7 &

Exs. 29–30]. In August 2005, apparently over petitioner's objection, the district court sua sponte transferred the petition— erroneously, as it turned out—to the Ninth Circuit, which transferred it back in January 2006. [*See* Answer 7 & Exs. 29, 31]. Any delay caused by that transfer was not petitioner's doing. *See Ly v. Hansen*, 351 F.3d 263, 272 (6th Cir.2003)(explaining, in a case involving detention of a criminal alien under section 1226(c), that "appeals and petitions for relief are to be expected as a natural part of the process. An alien who would not normally be subject to indefinite detention cannot be so detained merely because he seeks to explore avenues of relief that the law makes available to him. Further, although an alien may be responsible for seeking relief, he is not responsible for the amount of time that such determinations may take.").

Respondents also asserts that petitioner's habeas petitions and petitions for review were frivolous and were filed to "stall" or "stymie" efforts to remove him. [Answer 15]. A court must "be sensitive to the possibility" that a removable alien may engage in "dilatory tactics" in order to "compel a determination" that his detention was unreasonably long. *Ly*, 351 F.3d at 272 (noting that the alien's application for relief from removal and his need for a rescheduled hearing were partly responsible for prolonging his detention, but that those filings did not justify the overall length of detention). Here, however, the government's characterization of petitioner's court filings as merely frivolous vehicles to delay removal is conclusory and unsupported by citation to specific filings or court rulings in his cases showing that petitioner engaged in delay tactics. For one thing, not all of petitioner's court cases challenged his removal or detention or included a stay of removal, so in those instances he cannot be said to have "stalled" his removal or caused his own detention.

[*See* Petition 8 & n. 5; Travers 3, 8–9]. *Cf. Tijani*, 430 F.3d at 1249 (noting that "while [the petitioner] requested continuances, those occurred early in the process, and have not contributed at all to the year-long delay since the BIA heard his appeal"). Moreover, petitioner twice was successful in obtaining a stay of removal. The issuance of stays by the district court and Ninth Circuit belies the government's contention that his petitions were frivolous. A stay of removal is not automatic; it is granted only if the petitioner shows either the probability of success on the merits and the possibility of irreparable injury, or that serious legal questions are raised and the balance of hardships tips sharply in the petitioner's favor. *See Andreiu v. Ashcroft*, 253 F.3d 477, 484–484 (9th Cir. 2001)(en banc); *Abbassi v. I.N.S.*, 143 F.3d 513, 514 (9th Cir.1998). [*See* Answer, Ex. 25 (Order Staying Removal)].

■ In sum, petitioner has shown that his detention for five years was excessive and unauthorized by the controlling statute, section 1226(c). The remaining question is whether petitioner has "provid[ed] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," making his continued detention "reasonably necessary to bring about" his removal. If so, the government must respond with evidence sufficient to rebut that showing. *See Zadvydas*, 533 U.S. at 689–690, 699, 121 S.Ct. 2491; *Nadarajah*, 443 F.3d at 1079–1080.

Petitioner contends that his removal is not reasonably foreseeable for two reasons. First, he argues that the Ninth Circuit may well reverse his removal order or remand his case for further administrative proceedings because his petition for review advances substantial, meritorious arguments that the IJ erred in ruling that petitioner's 1996 conviction for second-degree burglary under California law was an aggravated felony and by holding that he

was ineligible for relief from removal. [*See* Petition 11]. Second, petitioner argues that regardless of the likelihood of prevailing on his petition for review, his removal is not significantly likely to happen in the foreseeable future because there is no time frame for a decision by the Ninth Circuit, which relied partly on the absence of a timetable for decision in *Nadarajah* to conclude that there was no significant likelihood of removal in the reasonably foreseeable future. *See Nadarajah*, 443 F.3d at 1081. Those reasons are sufficient to show that petitioner's removal is not reasonably foreseeable.

The government has made no attempt to respond to petitioner's contentions regarding the merits of his pending petition for review. The government maintains that petitioner's "removability is not in doubt," but that assertion is based on petitioner's history of past pro se filings, rather than on any specific evaluation of, or argument regarding, the merits of his pending petition before the Ninth Circuit, where petitioner is now represented by counsel. [Answer 19]. The government points out that petitioner does not have the benefit of having "won at every administrative level" and of having "won relief denied 98% of applicants" for asylum, like the petitioner in *Nadarajah*. [*See* Answer 14]. Although the petitioner's success before the agency in *Nadarajah* was a "powerful indicator of the improbability of his foreseeable removal," he was not guaranteed relief from removal because "the ultimate decision on whether to grant asylum [was] committed to the Attorney General's discretion . . . ." *Nadarajah*, 443 F.3d at 1081. Furthermore, the Ninth Circuit did not suggest that the rare success enjoyed by the petitioner in *Nadarajah* was a prerequisite for demonstrating the absence of a significant likelihood of removal in the reasonably foreseeable future.

The government does not attempt to argue that there is a timetable for decision by the Ninth Circuit regarding petitioner's petition for review, nor could it credibly do so. According to the docket sheet available on PACER for *Martinez v. Gonzales,* No. 05–73975 (9th Cir. filed July 5, 2006), the petition for review was transferred to the Ninth Circuit and filed in that court nearly two years ago. Petitioner's opening brief was filed on December 30, 2005, and his reply brief was filed on May 25, 2006. On November 28, 2006, about six months after briefing had been completed, petitioner's counsel filed a notice of appearance, and the court ordered replacement briefing rather than supplemental briefing. Both parties subsequently filed unopposed motions for extensions in the replacement briefing schedule. The government's answering brief was filed on June 11, 2007, and petitioner's reply brief is due on July 12, 2007.

In *Nadarajah,* the Ninth Circuit rejected the government's argument that the petitioner was not being held indefinitely because, even though the Attorney General "will someday review [the petitioner's] case, and 'his detention will at some point end,' [n]o one can satisfactorily assure us as to when that day will arrive. Meanwhile, petitioner remains in detention." *Nadarajah,* 443 F.3d at 1081. In *Tijani,* the court ordered the petitioner to be released or provided a bail hearing where he had been detained under section 1226(c) for more than two years and eight months, his petition for review was pending, the government had filed its answering brief only a month earlier, and "the foreseeable process in this court … is a year or more." *Tijani,* 430 F.3d at 1242. The circumstances of this case are analogous because even though petitioner's petition for review at some point will be adjudicated, there is no timetable or date for disposition of his petition or for effectuating his removal if he loses. Petitioner's removal therefore is not reasonably foreseeable, and his continued detention is not reasonably necessary to effect his removal.

Because petitioner obtained a preliminary injunction granting him a bond hearing and was released on bond following a hearing before an IJ, the government's request that any review of his detention be limited to a file custody review is moot. The government's contention that petitioner should not be released because he is a flight risk or poses a danger to the community are unpersuasive in light of the IJ's conclusion that the government failed to meet its burden of proof to establish by clear and convincing evidence that petitioner presents a sufficient danger or flight risk. Specifically, the IJ found that petitioner's dangerousness did not justify prolonging his detention because (1) he presented sufficient evidence of rehabilitation since his re-incarceration in 2002; (2) he has plans for future counseling with his sister, and (3) he has not been convicted of any violent crimes. [Petitioner's Suppl. Mem., Ex. B at 5]. The IJ found that the evidence of flight risk did not justify prolonging petitioner's detention because (1) petitioner's entire family and his daughter reside in the United States; (2) he has no family in Ecuador; (3) he appeared for all of his prior criminal proceedings and immigration proceedings; and (4) although petitioner "was clearly adverse" to the possibility of leaving the United States, bond could be set in an amount that would reasonably ensure his appearance. [Petitioner's Suppl. Mem., Ex. B at 5].

Petitioner's continued detention is not authorized by statute, and therefore he is entitled to release.

### Conclusion

It is recommended that the petition be granted, and that petitioner be released on

the conditions already imposed by the IJ's order dated February 8, 2007.

June 25, 2007.