**Andrew ARNOLD, Plaintiff,**

v.

**Philip CRAWFORD, et al., Defendants.**

**No. CV 07–170–PHX–JAT (LOA).**

United States District Court,
D. Arizona.

May 20, 2008.

Andrew A. Arnold, Eloy, AZ, pro se.

Cynthia M. Parsons, U.S. Attorney's Office, Phoenix, AZ, for Respondents.

## ORDER

JAMES A. TEILBORG, District Judge.

Pending before this Court is a Petitioner's Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2241. The Magistrate Judge has issued a report and recommendation (R & R) recommending that the Petition be granted to the extent that it recommends that this Court order Respondents to give Petitioner a bond hearing or release him. (Doc. # 18). The Respondents have objected to the R & R. (Doc. # 19). Petitioner has filed a response to the objections. (Doc. # 24).

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Because objections to all conclusions of the R & R were filed, the Court will review this case *de novo. See United States v. Reyna–Tapia,* 328 F.3d 1114, 1121 (9th Cir.2003) (*en banc* ).

The issue in this case is whether an alien, who is removable, but the removal period has not commenced because of a stay of removal ordered by the Court of Appeals, has a right to a bond hearing or release, based on the length of his detention, when he is being detained under 8 U.S.C. § 1226(c).[1]

Preliminarily, the Court will consider the basis for Petitioner's detention. This Court has addressed detention under 8 U.S.C. § 1226(c) before and found as follows:

> Under 8 U.S.C. § 1226(c), "the Attorney General shall take into custody any alien who is removable from this country because he has been convicted of one of a specified set of crimes." *Demore v. Kim,* 538 U.S. 510, 513, 123 S.Ct. 1708,

---

1. As the R & R notes, Petitioner's underlying immigration case, which was appealed to the Ninth Circuit Court of Appeals in 2005, with a subsequent consolidated appeal filed in 2006, is still pending.

155 L.Ed.2d 724 (2003) (internal quotations omitted). . . .

When a person is detained under 8 U.S.C. § 1226(c), the person may request a hearing pursuant to *Matter of Joseph*, 22 I. & N. Dec. 799, 1999 WL 339053 (BIA 1999). At this hearing, the person is, "entitled to raise any nonfrivolous argument available to demonstrate that he was not properly included in a mandatory detention category." *Demore*, 538 U.S. at 514, 123 S.Ct. 1708. A " 'Joseph hearing' is immediately provided to a detainee who claims that he is not covered by § 1226(c). . . . At the hearing, the detainee may avoid mandatory detention by demonstrating that he is not an alien, was not convicted of the predicate crime, or that the INS is otherwise substantially unlikely to establish that he is in fact subject to mandatory detention." *Id.* at 514, n. 3, 123 S.Ct. 1708.

*Makaj v. Crowther*, 2007 WL 3224539, *3 (D.Ariz.2007).

■ In this case, the Government first argues that Petitioner's failure to request a *Joseph* hearing equates to him failing to exhaust his administrative remedies. The Magistrate Judge concludes that exhaustion is not required in this case because the remedy potentially provided in a *Joseph* hearing is not the remedy Petitioner now seeks. R & R at 10. The Government objects and argues that Petitioner was required to request a *Joseph* hearing before bringing this claim to this Court. Objections at 3–6. Generally, this Court agrees with the recommendation of the R & R that the remedy Petitioner is seeking in this case is not the remedy made available to him via a *Joseph* hearing. Specifically, under *Joseph*, Petitioner may challenge whether he falls within the mandatory detention provisions of 8 U.S.C. § 1226(c). In this case, Petitioner is arguing that assuming he falls within the mandatory detention provisions of 8 U.S.C. § 1226(c), his continued detention is still constitutionally impermissible under *Tijani v. Willis*, 430 F.3d 1241 (9th Cir.2005). Thus, the Court finds that exhaustion via a *Joseph* hearing is not required because Petitioner is not challenging whether he is subject to mandatory detention.

Aside from the issue presented in the preceding paragraph, Petitioner may be attempting to contest his "removability" in his Petition. Specifically, in his Response to the Government's Objections, Petitioner states, "Mr. Arnold has not conceeded [sic] removability. . . ." Response to Objections at 12. However, this Court finds that Petitioner has conceded removability. In the R & R, the Magistrate Judge found that Petitioner had admitted that he is subject to removal, "in that he, at any time after admission [into the United States], was convicted of a crime of domestic violence. 8 U.S.C. § 1101(a)(2)(E)(i). The fact that Petitioner has consistently challenged the classification of this conviction as an aggravated felony does not change the fact that he admitted to a conviction which renders him removable." R & R at 13. This Court agrees with and accepts the Magistrate Judge's finding that Petitioner has conceded removability.

Thus, the issue presented is whether a removable alien who has received a "final" order of removal as that term is defined in 8 U.S.C. § 1101(a)(47)(B)(i),[2] who is still in mandatory detention because he has received a stay of removal from the Court of Appeals while he appeals the BIA's decision, is entitled to a bail or bond hearing under *Tijani v. Willis*, 430 F.3d 1241 (9th Cir.2005); *Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001); and *Demore v. Kim*, 538 U.S. 510,

2. *See also Andreiu v. Ashcroft*, 253 F.3d 477, 488 (9th Cir.2001) (J. Beezer concurring).

123 S.Ct. 1708, 155 L.Ed.2d 724 (2003). This Court has previously addressed this issue, finding:

> In *Demore*, the Supreme Court addressed whether a person could be held in no-bail civil detention under 8 U.S.C. § 1226(c). The Supreme Court held that the detention of a person for the limited period of his removal proceedings is constitutionally permissible. *Demore*, 538 U.S. at 531, 123 S.Ct. 1708. [footnote omitted] In reaching his conclusion, the Court stated, "In sum, the detention at stake under § 1226(c) lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal." *Id.* at 530, 123 S.Ct. 1708.
>
> This case would appear to fall within the ruling of *Demore*. Specifically, Petitioner is, for purposes of this analysis, a deportable alien who is subject to mandatory detention under 8 U.S.C. § 1226(c). Therefore, his no-bail civil detention is constitutional. However, this case may be distinguishable from the reasoning of *Demore* because Petitioner has been in custody since August 16, 2004, over three years. Doc. # 1 at 4.
>
> In *Tijani v. Willis*, 430 F.3d 1241 (9th Cir.2005), a panel of the Ninth Circuit Court of Appeals addressed a situation in which a person was in mandatory detention pursuant to 8 U.S.C. § 1226(c) for two years and eight months. In that case, each member of the panel wrote separately. Two members of the panel in *Tijani* agreed that Tijani was entitled to a bail hearing after this length of detention. *Tijani*, 430 F.3d at 1242–43. [Footnote 4: In dissent, Judge Callahan notes, "The constitutional limit, if any, to the duration of an alien's detention under § 1226 ... was left open by the Supreme Court in *Demore*.... [The reasoning of *Demore*] may be read as implying a limit to the duration of detention pending a determination of removability, or as holding that because the removal proceedings are by definition finite, there is no constitutional limit to the duration of detention under 1226(c). ...." *Tijani*, 430 F.3d at 1252–53 (Callahan, J. dissenting) [footnotes omitted].]

*Makaj v. Crowther*, 2007 WL 3224539, *4 (D.Ariz.2007).

In the case before the Court today, Petitioner Mr. Arnold is similar to Mr. Makaj in that Mr. Arnold has been in mandatory detention "two years and eight month and counting." Response to Objections at 13. He is also similar in that this Court has deemed him to have conceded that he is removable. In analyzing these similar facts, this Court found:

> Initially, the Court agrees with the R & R that Petitioner's mandatory detention has not been for a short duration as seemingly envisioned by *Demore*. Conversely, unlike *Zadvydas*, wherein the government could not accomplish removal of the petitioner in the foreseeable future, in this case, the government claims it can immediately remove Petitioner, but Petitioner's own actions prevent such removal. Specifically, Petitioner has had his removal stayed pending his appeal. Thus, nothing could be done by the government (or presumably by the petitioner) in *Zadvydas* to effect petitioner's removal, therefore, there was the potential for permanent confinement. In this case, when confinement will end is within Petitioner's control, should he choose to drop his appeals. Certainly Petitioner has a right to prosecute his appeals within the court system, however, the additional right he seeks in this Petition is to be free within the United States, after the government found him removable, while he uses the court system. Because this

Petitioner, unlike the *Zadvydas* petitioner, has control over when his confinement will end, the Court finds this case distinguishable from *Zadvydas*.

This conclusion—that Petitioner's use of the appellate system should not form the basis of an unconstitutional detention claim against the government—is supported by footnote 14 of *Demore* which states that, "Respondent contends that the length of detention required to appeal may deter aliens from exercising their right to do so.... As we have explained before, however, 'the legal system ... is replete with situations requiring the making of difficult judgments as to which course to follow,' and even in the criminal context, there is no constitutional prohibition against requiring parties to make such choices." *Demore*, 538 U.S. at 530, n. 14, 123 S.Ct. 1708. [Footnote 8: Based on this language, an argument can be made that "final order of removal" as envisioned by *Demore*, which would typically take one and one-half months or only five months with an appeal, does not include the time to appeal to the Court of Appeals. [citation omitted]. *See also Mboussi–Ona v. Crawford*, 2007 WL 3026946, *5 (D.Ariz. 2007) (holding that the time to appeal to the Circuit Court of Appeals which is attributable to Petitioner is not included in a *Tijani* analysis, "If the *Tijani* gloss applies in this manner, then every judicial appeal will exceed this 'expedited' standard. This would mean that by merely seeking judicial review, every alien found removable would be entitled to an individualized bond hearing and possible release.") ] Further, courts have concluded that delay that is attributable to the immigrant can justify continued detention, *see Ly v. Hansen*, 351 F.3d 263, 272 (6th Cir.2003) (cited by *Tijani*, 430 F.3d at 1246, n. 4 (Tashima, J. concurring)), and the Supreme Court agrees. *See Demore*, 538 U.S. at 530–

31, 123 S.Ct. 1708 (finding that the immigrant's request for a continuance helped justify the longer than average detention in this particular case).

*Makaj v. Crowther*, 2007 WL 3224539, *5 (D.Ariz.2007).

Ultimately, this Court concluded that Mr. Makaj was not entitled to a bail hearing because the reason he remained in mandatory detention, after conceding he was removable and subject to mandatory detention, was because he chose to appeal. This Court found that Mr. Makaj's case was distinguishable from *Tijani* because the first-writing member of the *Tijani* panel distinguished *Demore* based on the fact that the alien in *Demore* had conceded removability and the alien in *Tijani* has not. *See Makaj v. Crowther*, 2007 WL 3224539, *6 (D.Ariz.2007); *Makaj v. Crowther*, CV 07–342–PHX–JAT (Order filed November 28, 2007) (Doc. # 38). Specifically, this Court stated:

... [T]he only basis on which one member of the panel distinguishes *Demore* is that in *Tijani*, unlike *Demore*, the immigrant had not conceded deportability. 430 F.3d at 1242. If this is the only relevant distinction from *Demore*, as opposed to that the length of detention in *Tijani* was significantly longer than the length of detention recounted as average in *Demore*, then whether Petitioner has conceded removability in this case would decide whether he falls under *Demore* or *Tijani*.

*Makaj v. Crowther*, 2007 WL 3224539, *6 (D.Ariz.2007). Following this conclusion, this Court ordered supplemental briefing on whether Mr. Makaj had conceded removability. Mr. Makaj filed a supplemental brief in which he conceded he was removable. Following which this Court found:

Petitioner's concession that he is removable causes this case to be indistinguish-

able from *Demore v. Kim,* 538 U.S. 510, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003). Specifically, *Tijani v. Willis,* 430 F.3d 1241 (9th Cir.2005), reached a different conclusion than *Demore.* In *Tijani,* the sole basis for distinguishing *Demore* was: "This case is distinct from *Demore v. Kim,* 538 U.S. 510, 513–514, 123 S.Ct. 1708, 155 L.Ed.2d 724 . . . (2003), where an alien conceded deportability.". *Tijani,* 430 F.3d at 1242. Based on this language, this case is distinct from *Tijani,* and consistent with *Demore,* because the alien has conceded deportability. Accordingly, habeas relief will be denied. *Makaj v. Crowther,* CV 07–342–PHX–JAT (Order filed November 28, 2007) (Doc. # 38) at 2.

■ Turning then to Petitioner Mr. Arnold's claims herein, the Court finds Mr. Arnold's detention to be essentially the same as Mr. Makaj's. In other words, because Petitioner has conceded removability, his case is distinguishable from *Tijani* and falls under *Demore.* As discussed above, under *Demore* mandatory detention during the time Petitioner chooses to prosecute an appeal is not impermissible. *See Demore,* 538 U.S. at 530, n. 14, 123 S.Ct. 1708; *see also Mboussi–Ona v. Crawford,* 2007 WL 3026946, *5 (D.Ariz.2007). This Court's conclusion is further supported by the Government's unrefuted assertion that Petitioner's removal proceedings lasted six months and three weeks until a final order of removal was issued—which is consistent with the average time recounted in *Demore.* Objections at 6–7. Accordingly, the Court finds that Petitioner remaining in mandatory detention during the time Petitioner appeals to the Ninth Circuit Court of Appeals, when Petitioner has conceded removability, is not constitutionally impermissible under *Demore.* 538 U.S. at 503, n. 14, 123 S.Ct. 1690.

Based on the foregoing,

**IT IS ORDERED** that the Report and Recommendation (Doc. # 18) is rejected except as specified above, Respondents' objections (Doc. # 19) are sustained as specified above, the Petition (Doc. # 1) is denied and the Clerk of the Court shall enter judgment accordingly.

## REPORT AND RECOMMENDATION

LAWRENCE O. ANDERSON, United States Magistrate Judge.

This matter arises on Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (docket # 1) Petitioner claims that his detention by the Department of Homeland Security ("DHS") violates the Due Process Clause of the Constitution. (docket # 1) Respondent has filed a Response (docket # 10) to which Petitioner has replied. (docket # 17)

### I. Factual and Procedural Background

Petitioner is a native and citizen of Belize who entered the United States on October 2, 1989. (Respondents' Exh. 1) On November 30, 1989, Petitioner's status was adjusted to that of lawful permanent resident under § 245(A) of the Immigration and Nationality Act ("INA"). (Respondents' Exh. 2)

#### A. Criminal Conviction and Sentence

On January 7, 2003, Petitioner pled *nolo contendre* in the California Superior Court, Los Angeles County, to inflicting corporal injury on a spouse/co-habitant in violation of California Penal Code, § 273.5(A). Petitioner was initially sentenced to 365 days in jail followed by five years formal probation. (Respondents' Exh. 3)

On February 10, 2005, Petitioner was arrested in California on new charges which were subsequently dismissed. (docket # 17 at 2; Respondents' Exh. 3) Petitioner, however, pled guilty to violating the

terms of his probation during a probation modification hearing on April 11, 2005 in the Superior Court of California. (Respondents' Exhs. 3, Exh. 10, Attachment Tr. 4/11/2005) The court reinstated Petitioner's probation to continue on the same terms and conditions. (docket # 17 at 2, Exh. 1; Respondents' Exh. 3) The court also suspended imposition of sentence on the condition that Petitioner serve 180 days in the Los Angeles County Jail. (*Id.*) The court subsequently explained that the April 11, 2005 Order had the effect of vacating the 365-day sentence imposed in 2003 and replacing it with a 180-day sentence. (Respondents' Exh. 17, Attachment)

### B. Removal Proceedings

### 1. Charges

On February 22, 2005, the Government issued a Notice to Appear ("NTA") charging Petitioner with being removable under § 8 U.S.C. § 1101(a)(2)(E)(i) as an alien convicted of a crime of domestic violence. (Respondents' Exh. 6) On April 28, 2005, Petitioner was taken into custody by the Department of Homeland Security ("DHS") and served with Form I-286, "Notice of Custody Determination." (Respondents' Exh. 4) Petitioner's bond was set at "No Bond." (*Id.*) Although Petitioner requested that an immigration judge review the "No Bond" determination, he subsequently withdrew that request at a June 9, 2005 custody redetermination hearing. (Respondents' Exh. 5) The Immigration Judge ("IJ") noted that Petitioner "withdrew his request for a redetermination hearing without prejudice to renew when he is ready." (Respondents' Exh. 5) Aside from the suggestion that Petitioner was unprepared for the hearing, the IJ provided no explanation for Petitioner's withdrawal of his request for redetermination of bond. (*Id.*) In his pleadings before this Court, Petitioner claims that he withdrew his request for redetermination of bond because he thought the allegation that he had been convicted of an aggravated felony rendered him ineligible for bond. (docket # 17 at 3)

On May 4, 2005, a Form I-261, Additional Charges of Inadmissibility/Deportation was filed which corrected the language of the charge of removability under 8 U.S.C. § 1101(a)(2)(E)(i). The I-261 also added a ground of removability under section 237(a)(2)(A)(iii) of the INA, 8 U.S.C. § 1101(a)(2)(A)(iii), charging Petitioner as removable based on his conviction of an aggravated felony, defined in § 1101(a)(43)(F) as a crime of violence for which the term of imprisonment is *at least one year.* (Respondents' Exh. 7)(emphasis added). On May 18, 2005, a second Form I-261 was filed to clarify that Petitioner's status had been adjusted to lawful permanent resident in 1989. (Respondents' Exh. 8)

### 2. Removal Proceedings before the Immigration Court

After being postponed twice to permit Petitioner time to obtain counsel, removal proceedings were conducted on June 25, 2007 before IJ Jeffrey Zlatow. (Respondents' Exh. 13) Petitioner appeared *pro se.* (Respondents' Exh. 13, Tr. June 27, 2005 at 20) Petitioner admitted that he was convicted on January 7, 2003 in California Superior Court of inflicting corporal injury on his spouse/co-habitant in violation of CPC § 273.5 ("domestic violence conviction"). (Respondents' Exh. 13, Tr. June 27, 2005 at 26–27) However, Petitioner denied the aggravated felony charge which was based on the allegation that he had been sentenced to 365 days in jail for the 2003 conviction. (*Id.* at 23) Petitioner argued that his actual sentence was 180 days. (*Id.* at 26)

With regard to the aggravated felony charge, the IJ stated "I'm not going to

make a finding today yet because I don't have the full record of conviction ... what I'm going to do is set this over to a contested hearing on the charge." (*Id.* at 27) The IJ next addressed Petitioner and said, "I assume that you want to try to stay in the United States if you were not convicted of an aggravated felony, correct?" Petitioner responded, "Yes." (*Id.* at 28) The IJ then stated, "we'll give you an application for cancellation of removal as a lawful resident in the meantime. If you were convicted of an aggravated felony you're not going to be eligible. If you were not convicted of an aggravated felony then you might be." (Respondents' Exh. 13, Tr. June 27, 2005 at 28) Thereafter, Petitioner advised the IJ that he has a "common-law" wife, who was not the victim of the domestic violence charge. (*Id.* at 28–29) Petitioner further stated that he has two children, ages 12 and 15 at the time of the 2005 hearing, who were born in the United States. (*Id.* at 29) He also testified that he has aunts and uncles living in the United States. (*Id.*) Petitioner testified that no one had ever petitioned to "immigrate him" and he has never served in the United States military. (*Id.*) Petitioner advised the IJ that he had never been harmed in Belize and had no fear of being harmed if sent there (Respondents' Exh. 13, Tr. June 27, 2005 at 30)

The IJ informed Petitioner that the only potential avenue for relief was the application for cancellation of removal. The IJ scheduled a hearing for July 20, 2005 to consider whether Petitioner's 2003 conviction constituted an aggravated felony. (*Id.*) The IJ informed Petitioner that if the aggravated felony charge was sustained, the IJ would likely order him removed on that date. On the other hand, if the aggravated felony charge was not sustained, Petitioner "should have the [cancellation of removal] application ready to submit to the court and [the court would] schedule ... a

hearing on that application." (Respondents' Exh. 13, Tr. June 27, 2005 at 30)

Removal proceedings resumed on July 20, 2005 and Petitioner again proceeded *pro se.* (Respondents' Exh. 13, Tr. July 20, 2005) Petitioner submitted documents regarding the modification of his sentence on April 11, 2005. (*Id.* at 38–42)

On July 20, 2005, the IJ issued its decision sustaining both charges of removability. (Respondents' Exhs. 9, 13) The IJ noted that Petitioner admitted that on January 7, 2003, he was convicted in the Superior Court of California of inflicting corporal punishment on his spouse/co-habitant in violation of CPC § 273.5. (Respondents' Exh. 13, Oral Decision of the Immigration Judge) The IJ noted that Petitioner denied having been sentenced to 365 days on that charge. The IJ rejected Petitioner's arguments and sustained the aggravated felony charge. (*Id.*) The IJ ordered Petitioner removed to Belize noting that he had not expressed any fear of harm upon regarding returning to Belize. (Respondents' Exh. 9) The IJ did not consider Petitioner's application for cancellation of removal. (Respondents' Exh. 13)

### 3. The BIA's First Decision

On August 12, 2005, Petitioner appealed the IJ's July 20, 2005 decision to the Board of Immigration Appeals ("BIA") claiming that the IJ erred in finding him removable as an aggravated felon and, therefore, ineligible for cancellation of removal. (Respondents' Exh. 10) Petitioner argued that his 2003 domestic violence conviction was not an aggravated felony because his sentence had been modified from 365 to 180 days. (Respondents' Exh. 10) On October 5, 2005, DHS filed a motion for Summary Affirmance. (Respondents' Exh. 11) On November 30, 2005, the BIA affirmed the IJ's conclusion that Petitioner was removable as an alien convicted of an aggravated felony and thus was not eligible to apply

for cancellation of removal. (Respondents' Exh. 12) The BIA found no evidence that Petitioner's "original sentence for the crime of corporal injury on a spouse or co-habitant ... was reduced from 365 to 180 days." (Respondents' Exh. 12) Rather, "it appears that, consistent with California's longstanding waiver practice, [Petitioner] waived 180 days of custody credits, which in turn allowed the sentencing court to reinstate [Petitioner's] probation and impose *an additional period* (180 days) of incarceration for the probation violation." (Respondents' Exh. 12)

On December 22, 2005, Petitioner filed a petition for review of the BIA's November 30, 2005 decision with the Ninth Circuit Court of Appeals. (Respondents' Exh. 14, C.A. No. 05–77289). That the Ninth Circuit granted Petitioner's motion for a stay of removal. (Respondents' Exh. 14)

In the meantime, on December 23, 2005, Petitioner filed a motion to reconsider with the BIA. (Respondents' Exh. 15) On January 26, 2006, the BIA denied Petitioner's motion. (Respondents' Exh. 16)

On July 19, 2006, Petitioner filed a motion to reopen and remand with the BIA on the ground that his 2003 sentence had been modified from 365 to 180 days and, therefore, he had not been convicted of an aggravated felony and was eligible to seek cancellation of removal under INA § 240A(a). (Respondents' Exh. 17) Petitioner claimed that although the California Superior Court initially sentenced him to 365 days for violating C.P.C. § 273.5, the court subsequently modified his sentence to 180 days. (Respondents' Exh. 15) Petitioner explained that this modification occurred during a probation violation hearing on April 11, 2005. (*Id.*) Petitioner further argued that because he had received a 180–day sentence he had not been convicted of an aggravated felony and, therefore, was eligible to apply for relief under INA § 240A(a). (*Id.*) Petitioner attached to his motion a July 7, 2006 Order from the Superior Court of California which explained that Petitioner's original 365–day sentence had been vacated and replaced on April 11, 2005 by a 180–day sentence. (Respondents' Exh. 17, attachment) The Honorable Dennis J. Landin explained that "[t]he order of April 11, 2005 was made possible by the defendant's waiving credit, for all purposes, of the previous 365 days served, thus, the controlling imposition and order is that which was made on April 11, 2005." (*Id.*)

### 4. BIA's Second Decision

After review of Petitioner's motion to reopen and the evidence which clarified that Petitioner's sentence on the 2003 domestic violence conviction was for less than one year, on September 22, 2006, the BIA re-opened the case for the limited purpose of vacating the IJ's order that Petitioner was subject to removal as an aggravated felon under section 237(a)(2)(A)(iii) of the INA. (Respondents' Exh. 18) The BIA noted that Petitioner remained subject to removal as charged under INA § 237(a)(2)(E)(i) based on his conviction of a crime of domestic violence. (*Id.*)

Despite the BIA's finding that Petitioner had not been convicted of an aggravated felony, the BIA declined to reopen the proceedings to permit Petitioner to seek cancellation of removal finding his application for cancellation of removal untimely. (Respondents' Exh. 18) The BIA further stated that Petitioner "had the opportunity to establish eligibility for relief before the Immigration Judge, and this Board, and we see no reason to grant the pending untimely motion to reopen." (Respondents' Exh. 18)

On October 31, 2006, Petitioner filed a Petition for Review of the BIA's September 22, 2006 decision with the Ninth Circuit Court of Appeals. (Respondents' Exh. 19, C.A. No. 06–75139) The stay of

removal previously granted in C.A. No. 05–77289 remained in effect. On February 9, 2007, the Ninth Circuit granted the government's Motion to Consolidate C.A. 05–77289 with C.A. No. 06–75139. (Respondents' Exh. 19) This matter is pending before the Ninth Circuit Court of Appeals.

### 5. Custody Review

In the meantime, on December 12, 2005, DHS advised Petitioner in a letter that a 90–day File Custody Review would be conducted on or about March 7, 2006. (Respondents' Exh. 20) On February 23, 2006, Petitioner filed documents in support of his release including a letter from his fiancé claiming financial hardship while Petitioner was in custody, a letter from an employer, and letters from various family members. (Respondents' Exh. 21) On March 7, 2006, DHS denied Petitioner's custody review application. (docket # 17, Exh. 10)

On December 15, 2005, the Belize consulate issued an Emergency Travel Document for Petitioner. (Respondents' Exh. 22)

On March 9, 2007, DHS sent Petitioner a letter advising him that his custody status would be reviewed on April 1, 2007. (Respondents' Exh. 23) In response, Petitioner submitted a declaration, a request for release, several letters of support, and evidence of employment and rehabilitation. (Respondents' Exh. 24) On or about April 4, 2007, Petitioner received a memorandum from the DHS advising him that his detention would continue. (docket # 17, Exh. 11) Petitioner's next custody review is scheduled for March of 2008. (docket # 17 at 7)

## II. Petition

In the pending Petition for Writ of Habeas Corpus, Petitioner claims that his continued detention violates the Constitution and that his removal is not reasonably foreseeable. (docket # 1) Respondents argue that Petitioner's claims are not properly before this Court because he has not exhausted his administrative remedies. Respondents also assert that Petitioner's detention is lawful and but for the stay of removal which Petitioner obtained from the Ninth Circuit Court of Appeals, he could be removed to Belize.

## III. Analysis

### A. Jurisdiction

Title 28 U.S.C. § 2241 authorizes the district courts to issue habeas corpus relief where a petitioner is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2241(c)(3). The Supreme Court has held that § 2241 confers jurisdiction upon the federal courts to consider cases challenging the detention of aliens during deportation proceedings. *Demore v. Kim,* 538 U.S. 510, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003); *Zadvydas v. Davis,* 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001). Although the REAL ID Act of 2005 eliminated district court jurisdiction over habeas corpus petitions challenging orders of removal, district courts retain subject matter jurisdiction over § 2241 petitions challenging the legality of an alien's detention. *See, Nadarajah v. Gonzales,* 443 F.3d 1069, 1075 (9th Cir.2006).

### B. Exhaustion

Respondents assert that the Petition should be denied because Petitioner failed to exhaust administrative remedies. Specifically, Respondents assert that Petitioner never requested a bond determination hearing, a so-called *Joseph*[1] hearing, before the Immigration Court.

---

**1.** *Matter of Joseph,* 22 I & N Dec. 799 (BIA 1999), 8 C.F.R. § 3.19(2)(ii).

As an initial matter, the Court notes that the initial bond determination is neither the issue in this case nor is it the cause of Petitioner's current detention. Rather, Petitioner remains in custody pursuant to DHS's custody review and denial of release on April 4, 2007. Second, as discussed below, exhaustion is not required in the present circumstances.

When applicable, the exhaustion doctrine provides that, "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed ... remedy has been exhausted." *McKart v. United States*, 395 U.S. 185, 193, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969) (citations and internal quotation marks omitted). However, exhaustion of administrative remedies is only required if either a statute specifically requires exhaustion or it is called for by the administrative scheme. *McKart*, 395 U.S. at 193, 89 S.Ct. 1657.

### 1. Title 8 U.S.C. § 1252(d)

Respondents argue that 8 U.S.C. § 1252(d)(1) requires Petitioner to exhaust administrative remedies before pursuing his § 2241 petition. Section 1252(d) provides, in relevant part, that: "(d) Review of final orders. A court may review a final order of removal only if—(1) the alien has exhausted all administrative remedies available to the alien as of right...." *Id.* In *Sun v. Ashcroft*, 370 F.3d 932 (9th Cir.2004), the Ninth Circuit addressed whether § 1252(d)(1) requires a petitioner to exhaust administrative remedies before filing a § 2241 petition challenging a removal order. *Id.* at 936. The Court held "that § 1252(d)(1) imposes a statutory exhaustion requirement on immigration habeas petitioners." *Id.* at 939. The Ninth Circuit then found that the petitioner in that case was required to exhaust administrative remedies with respect to his nonconstitutional statutory argument that an alien originally admitted as a refugee should be permitted to request a waiver of

inadmissibility under INA § 209(c). *Sun*, 370 F.3d at 943–944.

Neither *Sun's* holding nor § 1252(d)(1) applies to this case. Section 1252(d)(1) only applies to review of a final removal order. In *Sun*, petitioner raised a statutory challenge to his removal order. Unlike *Sun*, in the pending § 2241 Petition, Petitioner does not challenge his removal order. Rather, he raises a constitutional challenge to his continued detention under § 1226(c). Accordingly, Petitioner is not statutorily obligated to exhaust his claims. Respondents further argue that even if Petitioner is not statutorily obligated to exhaust his claims, he should be required to exhaust his claims as a prudential matter.

### 2. Prudential Exhaustion

Title 28 U.S.C. § 2241, the statute under which Petitioner files his habeas petition, does not specifically require petitioners to exhaust administrative remedies.

As the Ninth Circuit explained in *Castro–Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir.2001), *abrogated on other grounds*, *Fernandez–Vargas v. Gonzales*, 548 U.S. 30, 126 S.Ct. 2422, 165 L.Ed.2d 323 (2006):

> [Section 2241] does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus. However, we require, as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241 ... The exhaustion requirement in § 2241 cases is subject to waiver because it is not a "jurisdictional" prerequisite. (citation omitted) Our conclusion that it is not "jurisdictional" is based on the fact that exhaustion is not required by statute....

*Id.* *Castro* emphasized that the requirements of § 2241 should not be confused with § 2254 which specifically requires

that petitioners in state custody exhaust other remedies before seeking habeas corpus relief. *Id.* at 1047.

In *McCarthy v. Madigan*, 503 U.S. 140, 144, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992), *superseded by statute on other grounds as stated in, Garrett v. Hawk*, 127 F.3d 1263 (10th Cir.1997), the Supreme Court held that "[w]here Congress has not clearly required exhaustion, sound judicial discretion governs." *Id.* The *McCarthy* Court noted that "federal courts are vested with a 'virtually unflagging obligation' to exercise jurisdiction given to them." *Id.* at 146, 112 S.Ct. 1081 (internal citations omitted). Courts have discretion to waive the exhaustion requirement when it is prudentially required. *Id. see also, El Rescate Legal Servs., Inc. v. Executive Office of Immigration Review*, 959 F.2d 742, 746 (9th Cir.1991).

In determining whether to waive prudential exhaustion, federal courts must balance the interest of the individual in obtaining prompt access to a federal judicial forum against institutional interests favoring exhaustion. *McCarthy*, 503 U.S. at 146, 112 S.Ct. 1081 (internal quotations and citations omitted). "[A]dministrative remedies need not be pursued if the litigant's interests in immediate judicial review outweigh the government's interests in the efficiency or administrative autonomy that the exhaustion doctrine is designed to further." *Id.*

In this case, Petitioner's interest in immediate judicial review of his continued detention outweighs the administrative interest. First, the Petition cannot accurately be described as a request for review of the initial bond determination made in 2005. Petitioner does not specifically request that this court review a discretionary determination regarding his initial bond determination. Rather, he challenges the constitutionality of his prolonged detention.

Additionally, Petitioner's constitutional challenge will not be addressed through the administrative process because the Immigration Court lacks jurisdiction over his constitutional challenge to his continued detention. *Wang v. Reno*, 81 F.3d 808, 814 (9th Cir.1996)(holding that an alien was not required to exhaust his administrative remedies before seeking judicial review of his due process claim because that claim fell outside the scope of the Immigration and Nationality Act); *Van Eeton v. Beebe*, 49 F.Supp.2d 1186, 1189 (D. Oregon 1999)(holding that an alien detained pending removal proceedings was not required to exhaust administrative remedies before bringing federal habeas petition challenging denial of bail on due process grounds). Accordingly, there is no administrative remedy for Petitioner to exhaust. *McCarthy*, 503 U.S. at 144, 112 S.Ct. 1081 (stating that no exhaustion requirement should be imposed where no administrative proceeding exists to consider the constitutionality of petitioner's continued detention); *Duong v. Immigration and Naturalization Service*, 118 F.Supp.2d 1059, 1064 (S.D.Cal.2000).

In view of the foregoing, this Court has jurisdiction pursuant to § 2241 to consider Petitioner's constitutional claims and finds that exhaustion is not a jurisdictional requirement to the consideration of those claims. *See, Marquez v. Immigration and Naturalization Service*, 346 F.3d 892, 897 (9th Cir.2003)(concluding that even if administrative exhaustion was required before federal habeas review of petitioner's challenge to the constitutionality of his continued detention, the district court properly waived exhaustion because the exhaustion requirement in § 2241 cases is prudential, rather than jurisdictional.); *but see, Laing v. Ashcroft*, 370 F.3d 994, (9th Cir.2004)(concluding that exhaustion was required where petitioner challenged the BIA's ruling on removability).

## C. Statute Governing Petitioner's Detention

The parties agree that because of the Ninth Circuit's stay of removal, the removal period has not commenced, and therefore, 8 U.S.C. § 1226 governs Petitioner's current detention. Respondents also argue that because Petitioner conceded removability, *Demore v. Kim*, 538 U.S. 510, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003), supports Petitioner's continued detention, and the facts in *Tijani v. Willis*, 430 F.3d 1241 (9th Cir.2005), make that case inapplicable to this case. Respondents further argue that Petitioner is still detained only because of his continued litigation which has extended the removal period. (docket # 10)

The Court agrees that because Petitioner's removal order is presently on appeal to the Ninth Circuit Court of Appeals, the removal period has not commenced[2] and Petitioner remains subject to detention pursuant to 8 U.S.C. § 1226. *See*, 8 U.S.C. § 1231(a)(1)(B)(stating that "the removal period begins on the latest of the following: (i) The date the order of removal becomes administratively final. (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order."). *See also, Armijo v. Gonzales*, No. CV–05–1055–NVW (MEA), 2005 WL 2897520 (D.Ariz., Nov.1, 2005)(noting that order of removal was not final because Immigration Judge's decision finding petitioner ineligible for cancellation of removal was still on appeal before the BIA.).

However, for the reasons set forth below, the Court rejects Respondents' other arguments and finds that Petitioner's lengthy detention is not authorized.

## D. Whether § 1226 authorizes Petitioner's Continued Detention

As an initial matter, the Court finds that Petitioner has admitted that he is subject to removal in that he, at any time after admission, was convicted of a crime of domestic violence. 8 U.S.C. § 1101(a)(2)(E)(i). The fact that Petitioner has consistently challenged the classification of this conviction as an aggravated felony does not change the fact that he admitted to a conviction which renders him removable.

In *Demore v. Kim*, 538 U.S. 510, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003), as in this case, where the alien conceded deportability, the Supreme Court held that the detention of criminal aliens pursuant to 8 U.S.C. § 1226(c), i.e., before the issuance of a final order of removal, is "constitutionally permissible" for the "*limited* period" necessary to complete removal proceedings. *Id.* at 526, 531, 123 S.Ct. 1708.(emphasis added). The *Demore* Court noted that detention under § 1226 is usually of short duration with a "definite termination point." *Id.* at 529, 123 S.Ct. 1708. The Court found that "the detention at stake under § 1226(c) lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal." *Demore*, 538 U.S. at 530, 123 S.Ct. 1708. Although petitioner in *Demore* was detained for over six months, which was longer than average, the Supreme Court found that 'temporary' confinement permissible. *Demore*, 538 U.S. at 530–531, 123 S.Ct. 1708.

Two years after *Demore*, in *Tijani v. Willis*, 430 F.3d 1241, 1242 (9th Cir.2005), the Ninth Circuit considered a habeas cor-

---

**2.** After the completion of removal proceedings, the detention of an alien who has been ordered removed is governed by 8 U.S.C. § 1231(a). *Zadvydas v. Davis*, 533 U.S. 678, 683, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001)(referring to § 1231 as the "post-removal-period detention statute.").

pus petition filed by an alien who had been detained under § 1226(c) for "over two years and eight months." *Id.* The Ninth Circuit "construed the authority conferred by § 1226(c) as applying to expedited removal of criminal aliens." *Id.* The Ninth Circuit concluded that "[t]wo years and eight months of process is not expeditious; and the foreseeable process [necessary for judicial review] in this case . . . is a year or more." *Tijani,* 430 F.3d at 1242. *Tijani* held that petitioner was entitled to release unless the government provided him with a bond hearing before an immigration judge and established that the alien was a flight risk or a danger to the community. *Tijani,* 430 F.3d at 1242. Although petitioner had requested several continuances, the Ninth Circuit found those negligible and found that any delay in the proceedings was not attributable to petitioner. *Id.* In further support of the Court's ruling, Tashima, J., concurring, concluded that Petitioner was entitled to be released because his detention was unreasonable under *Demore* and *Zadvydas.* *Tijani,* 430 F.3d at 1249–50. He also noted that "the sheer length of [petitioner's] detention violates the Constitution now." *Id.* (Tashima, J., concurring).

Respondents argue that *Tijani* does not apply because petitioner in that case had not conceded deportability. The Court agrees that the facts presented in this case do not fall squarely within *Demore* or *Tijani* because neither case addressed whether, where an alien conceded removability, the prolonged detention of that alien under § 1226(c) constitutes an impermissible infringement of his constitutionally protected right to liberty. *See, Fuller v. Gonzales,* 2005 WL 818614 (D.Conn., April 8, 2005)(noting that *Demore* "did not address the permissibility of a multi-year detention."); *Demore,* 538 U.S. at 530–31, 123 S.Ct. 1708 (considering alien's six-month detention permissible under § 1226(c)). Here, Petitioner's detention during removal proceedings has exceeded the brief period of detention envisioned by *Demore,* and for the reasons discussed below, Petitioner is entitled to habeas corpus relief.

Shortly after *Tijani,* the Ninth Circuit again addressed the scope of detention under the immigration statutes in *Nadarajah v. Gonzales,* 443 F.3d 1069 (9th Cir. 2006). In *Nadarajah,* the Ninth Circuit ordered the release of an alien who had been detained pursuant to the "general immigration detention statutes," 8 U.S.C. § 1225(b)(1)(B)(ii) and (b)(2)(A), for over five years pending a final determination of removability. *Id.* at 1075–78. The Court rejected the government's argument that *Demore* authorized indefinite detention. *Id.* at 1081. Rather, the Court noted that *Demore* "grounded its holding by referencing the 'brief period' . . . of 'temporary' confinement." 443 F.3d at 1081 (citing *Demore,* 538 U.S. at 513, 523, 531, 123 S.Ct. 1708). The Court held that "the general immigration detention statutes do not authorize the Attorney General to incarcerate detainees for an indefinite period." *Nadarajah,* 443 F.3d at 1078 (citing *Zadvydas,* 533 U.S. at 701, 121 S.Ct. 2491). Rather, the Court concluded that detention must be "for a reasonable period." *Id.* The *Nadarajah* Court characterized "the six-month period as the touchstone of reasonableness." *Id.* at 1080. The Court concluded that "detention of nearly five years—ten times the amount of time the Supreme Court has considered acceptable absent a special showing—is plainly unreasonable under any measure," including section 1226(c). *Nadarajah,* 443 F.3d at 1080.

Respondents argue that *Nadarajah* does not apply because it arose under a different detention statute and is factually distinguishable from this case. The Ninth Circuit did not limit its holding in *Nadarajah* to the facts of that case. Rather, it

relied upon existing Supreme Court precedent to hold that the "general immigration detention statutes do not authorize indefinite detention and that an alien detained under those statutes beyond the presumptively reasonable six-month period is entitled to release with appropriate conditions when the government does not rebut the alien's showing that his removal is not reasonably foreseeable." *Nadarajah,* 443 F.3d at 1079–80. The Court concluded that because the petitioner had shown that his removal was improbable, and because his case had been referred to the Attorney General with no timetable for a decision, he had established that his removal was not reasonably foreseeable, and the government had not rebutted that showing. That conclusion, combined with "the unreasonable length" of the petitioner's detention, justified habeas corpus relief. *Nadarajah,* 443 F.3d at 1082.

While the Supreme Court has found the mandatory detention provisions of 8 U.S.C. § 1226(c) valid under certain circumstances, Petitioner's prolonged detention in this case is not the "limited" or "brief" period approved in *Demore. Demore,* 538 U.S. at 530, 123 S.Ct. 1708.

Petitioner has been detained for over thirty months, much longer than the six-month period described by the Ninth Circuit as presumptively reasonable under the general immigration detention statutes. *Demore,* 538 U.S. at 530, 123 S.Ct. 1708; *Nadarajah,* 443 F.3d at 1080 (stating that "detention of nearly five years—ten times the amount the Supreme Court has considered acceptable absent a special showing—is plainly unreasonable under any measure."); *Tijani,* 430 F.3d at 1242 (holding that a detention of over two years and eight months was not within the authority conferred by section 1226(c)). Although petitioner in *Nadarajah* was detained under § 1225(b), unlike petitioner who is detained under § 1226(c), "the Ninth Circuit's reading of *Demore* in *Nadarajah* indicates that section 1226(c), like section 1225(b), should be construed to prohibit indefinite detention and to contain the same reasonableness limitations on detention as § 1225(b)." *Martinez v. Gonzales,* 504 F.Supp.2d 887, 897 (C.D.Cal.2007). As previously stated, the Ninth Circuit interpreted *Demore* to stand for the proposition that a "brief" detention of no more than six months is presumptively reasonable for aliens detained under § 1226(c). *Nadarajah,* 443 F.3d at 1080–81 & n. 4.

Unlike petitioner in *Demore,* Petitioner has now been detained for over thirty months, and it has been over six months since his last custody review. Petitioner's detention, which has lasted well over two years, cannot be considered a "brief" or temporary period that would be considered reasonable under *Demore,* 538 U.S. at 527, 123 S.Ct. 1708.

Here, Petitioner's detention by DHS began on or about April 28, 2005. The final decision by the BIA was issued on September 22, 2006. (Respondents' Exh. 18) Thus, Petitioner was detained for roughly 17 months during administrative proceedings. Petitioner's 17–month detention during administrative proceedings is more than eleven times the average length of detention (1½ months) under § 1226(c) and over three times the average when an alien chooses to appeal (five months), and it is nearly three times as long as the six months that the Supreme Court suggested would be reasonable in *Demore,* 538 U.S. at 530, 123 S.Ct. 1708. Petitioner's detention pending removal proceedings far exceeds that contemplated in *Demore. Id.*

Petitioner's continued detention for over twelve months since the administrative proceedings is based on a stay of removal which Petitioner obtained when he appealed to the Ninth Circuit. Respondents correctly assert that Petitioner's decision to

seek judicial review and a stay of removal has contributed to the overall length of his detention. Indeed, Petitioner could secure his release by asking the appellate court to lift the stay of removal, thereby permitting DHS to execute his final order of removal. However, such a choice is untenable in this case where Petitioner has established that he was not convicted of an aggravated felony and yet has been denied the opportunity to pursue an application for cancellation of removal under INA § 240A. *Lawson v. Gerlinski*, 332 F.Supp.2d 735, 745 (M.D.Pa.2004)(rejecting INS' argument that petitioner's continued detention was not indefinite because he held the "keys to his cell" in view of the stay of removal which petitioner had requested.).

During removal proceedings before the IJ and the BIA, Petitioner consistently argued that his 2003 conviction is not an aggravated felony as defined in INA § 101(a)(43)(F) because his sentence was for less than one year. On September 22, 2006 the BIA reversed the IJ's finding that Petitioner was convicted of an aggravated felony, but declined to reopen the proceedings to permit Petitioner to pursue an application for cancellation of removal. (Respondents' Exh. 18) The BIA stated that the application for cancellation of removal was untimely. The BIA further found that Petitioner had already had the opportunity to present his claims for cancellation of removal to the IJ and to the BIA. (Respondents' Exh. 18) The record does not support the BIA's conclusion that the IJ and the BIA had previously considered Petitioner's claim for cancellation of removal. Rather, the IJ specifically reserved the issue of cancellation of removal until after it resolved whether Petitioner had been convicted of an aggravated felony. (Respondents' Exh. 13, Tr. June 27, 2005) Once the IJ concluded that Petitioner was convicted of an aggravated felony, it did not reach the cancellation of removal issue. Petitioner has been denied the op-portunity to pursue an application for cancellation of removal and is merely seeking further judicial review to secure an opportunity that has likely been wrongly denied.

Petitioner "should not effectively be punished for pursuing applicable legal remedies." *Lawson*, 332 F.Supp.2d at 746. Although Petitioner is responsible for seeking further relief, "he is not responsible for the amount of time that such determinations may take." *Ly v. Hansen*, 351 F.3d 263, 272 (6th Cir.2003). Moreover, Petitioner's court filings cannot be characterized as mere vehicles to delay his deportation. Petitioner has been granted a stay of removal by the Ninth Circuit. A stay of removal is not automatic. Rather, it is granted only if petitioner shows either the probability of success on the merits and the possibility of irreparable injury, or that serious legal questions are raised and the balance of hardships tips sharply in the petitioner's favor. *Andreiu v. Ashcroft*, 253 F.3d 477, 484 (9th Cir.2001)(*en banc* ).

In summary, Petitioner's detention under § 1226 since April of 2005 has exceeded the "brief period" authorized by § 1226(c) and the record reflects that Petitioner's removal is not reasonably foreseeable. First, the Ninth Circuit may order further administrative proceedings because Petitioner's petition for review advances the meritorious argument that the IJ erred in ruling that his 2003 conviction was an aggravated felony and thereby finding him ineligible to apply for cancellation of removal. Additionally, there is no time frame for a decision by the Ninth Circuit. *See Nadarajah*, 443 F.3d at 1081. In view of the foregoing, Petitioner should be afforded a hearing before an immigration judge with the authority to grant him bail. *See Tijani*, 430 F.3d at 1242; *Fuller v. Gonzales*, 2005 WL 818614 (D.Conn., April 8, 2005)(ordering bail hearing where petitioner's mandatory detention exceeded two years.).

Accordingly,

IT IS HEREBY RECOMMENDED that Petitioner's Petition for Writ of Habeas Corpus (docket # 1) be **GRANTED** unless within 30 days of the District Court's ruling on the Report and Recommendation Respondents provide Petitioner with a bond hearing before an Immigration Judge with the authority to grant Petitioner bail.

IT IS FURTHER RECOMMENDED that Respondents be ordered to file a status report every thirty days until Petitioner is granted a bond hearing.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment. The parties shall have ten days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See,* 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(e), Federal Rules of Civil Procedure. Thereafter, the parties have ten days within which to file a response to the objections. Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review. *See United States v. Reyna–Tapia,* 328 F.3d 1114, 1121 (9th Cir.2003). Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See,* Rule 72, Federal Rules of Civil Procedure.

October 24, 2007